DUBROWIN, ET UX. *v.* SCHREMP, ET UX.

[No. 655, September Term, 1966.]

*Decided December 6, 1967.*

*Motion for rehearing filed on December 22, 1967; denied on January 2, 1968.*

The cause was argued before HAMMOND, C. J., BARNES, MC-WILLIAMS, FINAN and SINGLEY, JJ.

*Charles E. Hogg* for appellants.

*Robert A. Schremp,* in proper person, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This case adds truth to the old adage, "Good fences make good neighbors," heretofore adopted by Robert Frost.[1]

On May 23, 1951, Robert A. Schremp and Gladys E. Schremp, the appellees here and defendants below, acquired title to property on Haviland Mill Road in Howard County, Maryland. At the time of purchase, the property was approximately bisected by a farm road which ran in a generally southwesterly direction from Haviland Mill Road and provided access to the source of the property's water supply. There was testimony that this road had been in existence for 50 and perhaps as long as 150 years. On May 17, 1952, the Schremps entered into a contract

---

1. Mending Wall, *Complete Poems of Robert Frost* (1964).

of sale with S. Ralph Dubrowin and Frances L. Dubrowin, the appellants here and plaintiffs below, for the sale of two parcels of land, one consisting of 36.076 acres, being the southerly portion of the property previously acquired by the Schremps, and a second parcel of 7.009 acres, adjacent to the larger parcel, which the Schremps proposed to acquire from C. Claude Cissell and wife.

The contract of sale contained the following provision:

> "The Sellers and the Purchasers agree to share equally the expense of constructing an entrance from Haviland's [sic] Mill Road over Parcel A and along the North boundary line of said parcel to a point where the said newly constructed road intersects and joins with the now existing road on the property of the Sellers. It is understood and agreed that the Sellers will not be required to pay more than One Hundred ($100) Dollars toward the cost of the construction of this new road. From the point where the newly constructed road intersects with the now existing road, the North boundary line of Parcel A shall be the North side of the said existing road. The deed of conveyance will reserve a right of way to the Sellers, their heirs and assigns, over the newly constructed road and the now existing road which is contained in Parcel A; said right of way shall be a fifteen (15) foot right of way."

Settlement was made on August 12, 1952. At a later date it was determined that the description contained in the deed delivered at settlement was inaccurate, and that the tract purchased from the Cissells actually contained 10.59 acres instead of the 7.009 acres called for in the contract of May 17, 1952. This led to the preparation and execution of a confirmatory deed which was dated February 22, 1953 but which was admitted by all parties actually to have been executed and delivered in 1954. The confirmatory deed contained a specific reservation for the benefit of the Schremps of the 15 foot right of way, the north side of which was the northern boundary of the property conveyed by the Schremps to the Dubrowins. This deed was signed by the Schremps and returned to the Dubrowins by Mr. Schremp on January 29, 1954.

The letter of transmittal contained the following paragraph: "'Thank you for your letter confirming our oral agreement that you will bear the entire cost of the road entrance to your property from Havilands Mill Road." This could have referred [but not if Mr. Schremp's letter was correctly dated] to a letter from Mrs. Dubrowin to Mr. Schremp dated January 28, 1954 but postmarked January 29, 1954, in which Mrs. Dubrowin said:

"When the road was built and you allowed it to be put partly on your land, Ralph and I agreed then that in return we would not ask you to share in the expense of building the road, with the understanding, of course, that we would have a continuous right-of-way over the road where it is."

Mr. Schremp testified that the letter of transmittal had been written by his secretary at his direction; that his name had been typed by his secretary; but that the letter had not been signed by him.

Testimony given at the trial below can be summarized as follows:

On March 13, 1953, John Brian, a contractor, met Mrs. Dubrowin and Mrs. Schremp at the Dubrowin property, with a view to constructing the new access road to Haviland Mill Road contemplated by the contract of sale. Brian suggested that the access road be constructed in a fashion which would make the approach from Haviland Mill Road more convenient. Since this meant that a portion of the road would be located on the property owned by the Schremps, Mrs. Dubrowin testified that Mrs. Schremp left the scene, telephoned her husband in Philadelphia and returned to say that he approved the suggestion.

This telephone conversation was denied by both Mr. and Mrs. Schremp. Mr. Schremp testified that a telephone conversation had taken place, but not until later, just prior to Mrs. Dubrowin's letter of January 28, 1954 and his reply of January 29, 1954, during which he was advised by Mrs. Dubrowin that the encroachment was about a foot and that in consideration of his

consent to the encroachment, the Dubrowins had agreed to bear the entire cost of the new entrance and not to require the Schremps to contribute half the cost but not more than $100, as provided by the contract of sale.

Schremp maintained that the encroachment was extended, possibly at the time of the construction of the Dubrowin house in 1960. This seems to have been supported by the testimony of Mr. Brian and Mrs. Dubrowin that Mr. Brian had done additional work on the access road at times subsequent to 1953, when additional lengths of pipe were put in the ditch along Haviland Mill Road and crushed stone was added after the winter of 1960-1961, as well as by Mr. Schremp's testimony that during the winter of 1958, when Haviland Mill Road was blocked, it was possible for him to drive from his garage across the area where the Dubrowin entrance had been built to reach Haviland Mill Road at a point considerably south of the entrance, and that a change in grade of the Dubrowin entrance subsequent to 1958 had made this impossible.

Relations between the Dubrowins and the Schremps continued to be on a friendly basis until 1963 when the Schremps' daughter attempted to have a tow truck use the right of way reserved to the Schremps to get to her car which was disabled on Haviland Mill Road. Mrs. Dubrowin apparently objected because of the possibility of damage to sod which, if located north of the Dubrowin entrance, must have been on the Schremp property. This led to an attempt by the Schremps to deny the Dubrowins the use of that portion of the entrance which encroached on the Schremp property.

On April 10, 1964, the Dubrowins instituted an action against the Schremps in the Circuit Court for Howard County, asking injunctive relief and damages. Thereafter a cross-bill was filed by the Schremps against the Dubrowins, asking that the Dubrowins be enjoined from trespass on the Schremp property and from interference with the Schremps' use of the reserved right of way.

The Court below held for the Schremps on the theory that the testimony showed that the Schremps had given the Dubrowins no more than a license, which had been revoked by the Schremps. This conclusion was based on language contained in *Brehm v. Richards,* 152 Md. 126, 132, 136 A. 618 (1927):

> "It is well settled that a right of way over land is an interest in land which cannot (apart from prescriptive user and necessity) be created except in the mode and manner prescribed by the recording statutes."

With this conclusion we do not agree. The holding in *Brehm* must be confined in its applicability to the facts of that case, or cases like it. In *Brehm,* which involved the use by Richards of a bridge constructed by Brehm on his own land, the record showed that there was no communication between Brehm and Richards at the time Richards improved the road and commenced to use the bridge, and that in fact the parties were not even acquainted at that time. Since there had been no agreement between Brehm and Richards, Richards acquired no title in consequence of the fact that Brehm acquiesced in the use of the bridge by Richards for some eight years.

In the instant case, it is entirely possible that the Dubrowins may have acquired an easement over the land of the Schremps if the letter written by Schremp on January 29, 1954 can be regarded as sufficient to take the case out of the Statute of Frauds (29 Car. II, c. 3 [1677]) and if the extent of the encroachment at the time of the writing of the letter can be proved by competent testimony.

The applicable provision of the Statute can be found in Alexander, *British Statutes In Force In Maryland,* (Coe Edition) Volume II at 690:

> "And be it further enacted by the Authority aforesaid, That from and after the said four and twentieth Day of June, no Action shall be brought whereby, * * * upon any Contract or Sale of Lands, Tenements, or Hereditaments, or any Interest in or concerning them * * * unless the Agreement upon which such Action shall be brought, or some Memorandum or Note there-

of shall be in Writing, and signed by the Party to be charged therewith, or some other Person thereunto by him lawfully authorized." [2]

At least since Lord Ellenborough's opinion in *Schneider v. Norris*, 2 Maule & S. 286, 105 Eng. Rep. 388 (1814) it has been recognized that a printed name constitutes a sufficient signature under the Statute of Frauds, provided that it is recognized by the party sought to be charged. The Statute itself permits the signature of "some other Person thereunto by him [the party to be charged] lawfully authorized." Mr. Schremp readily concedes that the letter of January 29, 1954 was written by his secretary at his direction and that his secretary was authorized to type his name at the foot. Maryland has adopted the rule of the *Schneider* case in *Drury v. Young*, 58 Md. 546, 554, 42 Am. Rep. 343 (1882) where the Court held,

"It is therefore a sufficient signing, if the name be in print, and in any part of the instrument, provided that the name is recognized and appropriated by the party to be his."

See, also, *Restatement of Contracts* §210 (1932); Casner, *American Law of Property* §11.5 (1952).

---

**2.** The full text of this provision of the Statute of Frauds reads as follows:

"And ' be it further enacted by the Authority aforesaid, That from and after the said four and twentieth Day of June, no Action shall be brought whereby to charge any Executor or Administrator upon any special Promise, to answer Damages out of his own Estate; (2) or whereby to charge the Defendant upon any special Promise to answer for the Debt, Default or Miscarriages of another Person; (3) or to charge any Person upon any Agreement made upon Consideration of Marriage; (4) or upon any Contract or Sale of Lands, Tenements, or Hereditaments, or any Interest in or concerning them; (5) or upon any Agreement that is not to be performed within the Space of one Year from the Making thereof; (6) unless the Agreement upon which such Action shall be brought, or some Memorandum or Note thereof shall be in Writing, and signed by the Party to be charged therewith, or some other Person thereunto by him lawfully authorized." . .

We do not hold that compliance with the recording statute (Code [1957] Art. 21, § 1) is not required for the creation of an easement by deed, *Nohowel v. Hall,* 218 Md. 160, 146 A. 2d 187 (1958), or would not be required if the case involved the rights of third parties who had no actual notice of the easement. *Columbia Hills Corp. v. Mercantile-Safe Deposit & Trust Co.,* 231 Md. 379, 190 A. 2d 635 (1963), *Mayor & City Council of Baltimore v. Brack,* 175 Md. 615, 3 A. 2d 471 (1939).

We do hold, however, that the letter of January 29, 1954, if it can be related to Mrs. Dubrowin's letter mailed the same date, may constitute a written memorandum signed by the party to be charged or by his authority, sufficient to take the case out of the Statute of Frauds, at least with respect to Mr. Schremp, and may, depending on the facts, constitute an agreement susceptible of enforcement in equity against the Schremps by the Dubrowins. *Sinclair v. Weber,* 204 Md. 324, 332, 104 A. 2d 561 (1954).

There remain to be resolved by competent testimony two questions: (1) the extent of the encroachment to which Mr. Schremp may have assented on January 29, 1954; and (2) whether Mr. Schremp, in authorizing the typing of his name on the letter, was empowered as Mrs. Schremp's agent to charge her interest in the property.

In their cross-bill in the lower court, the Schremps sought permanently to enjoin and restrain the Dubrowins from interfering with the grading and improving of the fifteen foot wide right of way, beginning at Haviland Mill Road, which was reserved in the deed of February 22, 1954. This relief was granted by the Chancellor. Since this question was not raised in the appellants' brief or in oral argument before us, we are of the opinion that that portion of the order and decree[3] should be affirmed.

---

3. AND IT IS FURTHER ORDERED, ADJUDGED and DECREED that the said S. Ralph Dubrowin and Frances L. Dubrowin, his wife, their agents, servants and employees be, and they are hereby, permanently enjoined and restrained from interfering with the said Robert A. Schremp and Gladys E. Schremp, his wife, their agents, servants and employees, in grading and improving the aforesaid fifteen foot wide right of way, beginning at the Haviland Mill Road.

Prior to the argument of the case there was presented by Mr. Schremp a motion to dismiss the appeal on the ground that the appellants had failed to comply with the provisions of Maryland Rule 828. He assigned as grounds for his motion the appellants' failure to print in the record extract a memorandum of facts prepared by the appellants and adopted by the Chancellor below, as required by § b 1 (a) of the Rule as well as the failure of the appellants to deliver to the appellees a written statement of the parts of the record to be included in the printed extract as required by § c 2. In view of the circumstances under which the appeal was brought and prosecuted, we do not find that appellees were prejudiced and therefore deny the motion.

> *Reversed in part, affirmed in part; case remanded for further proceedings in accordance with this opinion, costs to be equally divided between the appellants and the appellees.*