STATE HIGHWAY ADMINISTRATION OF THE
DEPARTMENT OF TRANSPORTATION
*v.* ANNAPOLIS MALL SHOPPING
CENTER CO. ET AL.

[No. 749, September Term, 1978.]

*Decided March 12, 1979.*

The cause was argued before GILBERT, C. J., and MOYLAN and COUCH, JJ.

*Norman Polski, Administrative Special Attorney,* with whom were *Francis Bill Burch, Attorney General, Nolan H. Rogers, Assistant Attorney General,* and *Stephen M. LeGendre, Special Attorney,* on the brief, for appellant.

*George W. Liebmann,* with whom were *Morton P. Fisher,*

*Jr., Robert B. Levin* and *Frank, Bernstein, Conaway &
Goldman* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

The State Highway Administration, appellant herein,
appeals a decree of the Circuit Court for Anne Arundel
County [1] by which it held that appellant had no right, title or
interest in the portion of the Old Annapolis and Elkridge
Railroad Company's (A & E) right of way which crosses
certain real property [2] leased by appellee Annapolis Mall
Shopping Center Co. (Annapolis Mall) from appellee
Provident Life and Accident Insurance Company, the record
owner of the real property adjoining the disputed right of
way. Appellant claims fee simple title to the tract.

The parties in the proceedings below stipulated to the chain
of title concerning the portion of the right of way presently
in controversy. In 1835 Robert Welch of Ben acquired a large
tract of land which included the future A & E right of way.
Welch of Ben subsequently entered into an 1838 arbitration
agreement with the A & E, which was recorded in 1841,
whereby it was agreed that,

> "the question of damages, (if any), which will be
> sustained by ... Robert Welch of Ben by occasion
> of the location of the line of said road (of the A &
> E) in, over and through the lands of ... Welch called
> The Farm ... and upon the payment to Welch ... of
> the sum of money, (if any), which shall be so
> awarded, ... Welch binds himself to convey to the
> ... company so much of the said land as may be
> required for the location of said road through his
> land and in estimating such damages the ...
> arbitrators ... shall take into consideration all
> advantages and disadvantages, benefits and
> injuries, conveniences and inconveniences, on the

---

1. The decree was entered pursuant to Md. R. 329 (Special Case by
Consent) (1978) and Cts. & Jud. Proc. Art. § 3-401, *et seq.* (1974 Repl. Vol.).

2. Title to two parcels was disputed below. Equity No. 24,810 was severed
and remanded due to an error in the title examination.

one side and the other and to the respective parties by the location and construction of said road."

The arbitrators subsequently awarded Welch of Ben five hundred dollars in damages. The award, also recorded in 1841, provides in pertinent part:

"Having examined the said land and the location of the aforesaid railroad through the same, made by the engineers of the said company and having the allegations and explanation of the parties, ... are of opinion and do adjudge and determine that for the land located for said road as included within the stakes driven, by authority of the said company and for the privilege of constructing its road over the same. The said company ought to pay to the said Welch, the sum of five hundred dollars, ($500.00), current money."

The strip of land was transferred by quitclaim deed in 1936 by the receiver of Annapolis Electric Railroad Company (successor to the A & E) to the Washington, Baltimore and Annapolis Realty Company, the State Highway Administration's immediate predecessor in what is claimed to be title. In 1941 the Washington, Baltimore and Annapolis Realty Company conveyed by fee simple deed, duly recorded, the property in issue to the State of Maryland to the use of the State Roads Commission of Maryland.[3]

The trial court found two factors to be dispositive of the question of title: (1) no deed was ever executed between Robert Welch of Ben and the A & E, and (2) if the railroad company had fee simple title to the right of way,

"... there would have been no necessity for the arbitrators to determine anything about 'the privilege of constructing its road over the same.' If the Railroad Company had been the unqualified owner, in fee, of this land, it would have had the

---

3. Appellant, State Highway Administration, is the successor of the State Roads Commission.

*right,* not the privilege, to use its own property as it desired." Citing *McCain v. Whittington,* Law No. 3768, fd. Aug. 31, 1953 (Cir. Ct. for Anne Arundel County).

The trial court additionally relied upon the fact that "the arbitrators were to determine damages, if any, which does not imply an intent to grant a fee simple." After looking at the agreement as a whole, and in view of *Whittington, supra,* the lower court concluded that Welch granted the railroad a right of way only; the easement having been abandoned at least since 1941, it reverted to appellees, Welch's successors in title.

The issue presented for this Court's consideration is as follows:

> 1. Was the trial judge in error in finding that the Agreement to Arbitrate between Robert Welch of Ben and the A & E and the subsequent Award created only an easement for railroad purposes?

Appellee raises an additional issue:

> 2. Was the prior decision of the Circuit Court for Anne Arundel County in *McCain v. Whittington, supra,* involving the identical award dispositive of this case by way of collateral estoppel or stare decisis?

The State Highway Administration bases its claim to a fee simple title to the strip of land by way of analogy to the inquisition procedure in use at the time by railroads. According to the State, the arbitration agreement and award was but another deedless method, much like the inquisition procedure in use at the time, for transferring land pursuant to the A & E's eminent domain powers delegated to it by the Legislature in its charter. Acts of 1836, Ch. 298. The inquisition procedure to which the State refers can be found in the Baltimore and Ohio Railroad's Charter, Acts of 1826, Ch. 123, which was incorporated by reference in Section 5 of the A & E Charter. In *State Roads Commission v. Johnson,*

222 Md. 493, 161 A. 2d 444 (1960), the Court of Appeals concisely described the inquisition procedure:

> "Section 15 of the B. & O. Charter authorized the company, if it could not agree with the owner of any land wanted for the construction of the railroad for the 'purchase or use and occupation of the same,' to apply to a justice of the peace who 'shall thereupon issue his warrant' to the sheriff to summon a jury to meet on the land to fix the damages. The sheriff was directed to administer an oath, to each juror selected, to 'impartially value the damages which the owner * * * will sustain by the use or occupation of the same required by the company', and reduce their inquisition to writing. Section 15 provided that such inquisition 'shall describe the property taken, or the bounds of the land condemned, and the quantity or duration of the interest in the same, valued for the company, and such valuation, when paid or tendered * * *, shall entitle the said company to the estate and interest in the same thus valued, as fully as if it had been conveyed by the owner * * * of the same * * *.' " *Id.* at 496.

Although it was possible for the A & E to obtain fee simple title to property acquired through the inquisition procedure, *id.* at 498, that method was specifically authorized by the legislature, but there is no such statutory authorization for the passage of title through an arbitration agreement and award.

Acts of 1766, Ch. 14, § 2,[4] which governed conveyances at the time the agreement and award were recorded, provides:

> "no estate of inheritance or freehold, or declaration of or limitation of use, or any estate above seven years, shall pass or take effect unless the deed conveying the same shall be executed, acknowledged and recorded . . ."

---

4. Later codified as Annot. Code, Art. 21, § 1 (1951); presently codified as Real Prop. Art. § 3-101 (1974).

It is conceded that no deed to the right of way was ever recorded, but the State wishes to place in its stead the arbitration agreement and award. It has been said that,

"[W]hen the subject [of the award] is a freehold not transferrable without the solemnity of conveyance, an award declaring the right to property is void, because the necessary solemnity is wanting; and yet the right of a freehold is as submissible, as the property of chattels. The difference is, that in the latter case [award of a chattel] the property is determinable, in the former it is not; but a further act is requisite." *Drane v. Hodges,* 1 H. & McH. 262, 270 (1768).

That further act we conclude to be the execution, acknowledgment and recordation of a deed in compliance with the Acts of 1766, Chapter 14, Section 2. *See also,* 5 Am.Jur.2d, § 55. The language of the arbitration agreement itself confirms this conclusion:

"... and upon the payment to ... Welch of the sum of money, (if any), which shall be so awarded, ... *Welch binds himself to convey* to the company so much of the said land as may be required [for the building of the road] ..." (Emphasis added.)

In *Davy's Executors v. Faw,* 7 Cranch (U. S.) 171, 3 L. Ed. 305 (1812), Chief Justice Marshall observed that where a dispute concerns title to land, the submission and award must be by deed. Similarly, cases from other states support the proposition that an award cannot operate to convey the legal title to real property, *Fore v. Berry,* 94 S. C. 71, 78 S. E. 706, 708 (1913); *Cox v. Heuseman,* 124 Va. 159, 97 S. E. 778, 780 (1919).

The trial court, however, did err in determining that the agreement and award granted an easement. The requirement of a deed in conformity with the Acts of 1766, Ch. 14, § 2, applies with equal force to a grant of an easement for railroad purposes. *Dawson v. Western Md. R.R.,* 107 Md. 70, 93, 68 A. 301 (1907); *see also Brehm v. Richards,* 152 Md. 126, 136

A. 618 (1927). A right to an easement must be founded on a grant by deed, or upon prescription, for it is a permanent interest in another's land, with a right of enjoyment." *Id.* at 94 quoting *Partridge v. Church,* 39 Md. 631 (1874). Accordingly, we hold that the Arbitration Agreement and Award between Robert Welch of Ben and the Annapolis and Elkridge Railroad Company was ineffective to pass legal title, be it fee simple or an easement, to the strip of land previously occupied by the A & E Railroad.

Appellees argued below, and the trial judge agreed, that if anything had in fact been conveyed it was an easement which the parties agree has been abandoned. Having determined that the arbitration agreement and award was not a proper substitute for a deed, we deem it unnecessary to speculate as to what kind of interest Robert Welch might have conveyed.[5]

Having decided on the merits in appellees' favor, we see no need to consider whether collateral estoppel or stare decisis would control the outcome of this case.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

5. We note that no claim of title was made by prescription.