REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No. 01364

September Term, 2013

_____


WILLIAM E. PETERS, ET UX.,

v.

EMERALD HILLS HOMEOWNERS'
ASSOCIATION, INC.

_____

Graeff,
Kehoe,
Friedman, JJ.


JJ.

_____


Opinion by Kehoe, J.

_____


Filed: February 2, 2015

As a general rule, a party seeking to establish an easement by express grant or reservation must do so by executing a deed that complies with Maryland's recording statutes. Nearly fifty years ago, the Court of Appeals recognized an exception to this rule when it concluded that an express easement could be created by a memorandum that satisfied the Statute of Frauds even if the writing was not a deed. *Dubrowin v. Schremp*, 248 Md. 166, 171 (1967). More recently, the Court suggested that a plat could constitute such a memorandum, although the Court concluded that the plat in the case before it did not. *Kobrine v. Metzger*, 380 Md. 620, 636–37 (2004). This appeal calls us to revisit *Dubrowin* and *Kobrine* in order to decide whether a subdivision plat established an express easement to the benefit of an adjoining property.

William E. Peters and Victoria A. Peters appeal from a judgment of the Circuit Court for Harford County entering a declaratory decree in favor of the Emerald Hills Homeowners' Association, Inc. At issue is whether a lot owned by the Peterses is benefitted by an access easement over land owned by the Association. The circuit court concluded that there was neither an express nor an implied easement and granted summary judgment in favor of the Association.

Mr. and Mrs. Peters present a number of issues but the dispositive inquiry boils down to whether an express easement over the parcel in question was established during the subdivision process for what is now the Emerald Hills subdivision. Because we conclude that the answer to this question is "yes," we will reverse the circuit court's judgment and remand this case for further proceedings.

## Background

Victor Posner is said to have remarked that "I buy by the mile and sell by the inch."[1] The "buy by the mile" part of our story occurred in 1969, when a corporation controlled by Posner acquired a 64-acre parcel located near Bel Air, Maryland from William and Margaret Sheppard. This property was adjacent to "Greenridge," a residential subdivision developed by Posner. In the deed of conveyance, the Sheppards retained title to a parcel of a little less than an acre. (The parties refer to this property as "Parcel 765," and we will do the same.) Parcel 765 does not front on a public road, so the Sheppards also reserved a non-exclusive right-of-way over a 50' wide strip (the "Right-of-Way Parcel") running along a portion of the southerly[2] boundary of Parcel 765. The Right-of-Way Parcel provides access to Southview Road, a public street in the Greenridge subdivision. Parcel 765 is now improved by a residence but when the structure was built is unclear from the record.

The "sell by the inch" process began in 2000, when Posner obtained approval from Harford County to develop what is now called "Emerald Hills," a residential

---

[1]As related in his obituary in the New York Times. http://www.nytimes.com/2002/02/13/business/victor-posner-83-master-of-hostile-takeover.html (last visited September 24, 2014).

[2]The right of way is actually oriented on a southwesterly/northeasterly axis but we will refer only to the cardinal points of the compass for simplicity's sake.

community adjacent to the Greenridge development.[3] Posner developed Emerald Hills in five phases and, for each phase, he recorded a subdivision plat in the land records. The County approvals for Emerald Hills called for the construction of "Streamview Court," a 50' wide public street, partially aligned with Southview Road, the existing street in the adjacent Greenridge subdivision. Separating the two public roads, but included within the Emerald Hills subdivision, is the Right-of-Way Parcel. Streamview Court ends in a cul-de-sac so its terminus does not line up precisely with the rectilinear Right-of-Way Parcel or the equally rectilinear Parcel 765. However, the cul-de-sac shares points of intersection with each parcel. The parties refer to the intersticial area between the two parcels and the cul-de-sac as the "Triangular Parcel." It is approximately 800 square feet in area.

Parcel 765, the Right-of-Way Parcel and the Triangular Parcel are depicted on one of the five Emerald Hills subdivision plats (the "Plat"). Part of the Plat is reproduced below (the image has been cropped to display the relevant portion and is not to scale):[4]

---

[3]This subdivision was developed in phases. Earlier phases were known as "Greenbriar Hills." At some point, the name of the development was changed to Emerald Hills.

[4]We have added identifiers for Parcel 765, the Triangular Parcel, Streamview Court, and the Right-of-Way Parcel, as well as enhanced the borders around the Right-of-Way Parcel.

3



On the Plat:

    (1) The Triangular Parcel is marked with slashes, "/ / / /." A note on the Plat states that these slash marks "denote[] ingress & egress easement for access to Parcel 765."

    (2) The Right-of-Way Parcel is marked with reversed slashes, "\ \ \ \." A note on the Plat states that the reversed slash marks "denote[] existing ingress and egress easement for Parcel 765 as per [the Sheppard Deed]."

    (3) Both the Right-of-Way Parcel and the Triangular Parcel are shaded in a grey tone.[5] A note on the Plat indicates that this shading "denotes pedestrian and emergency vehicle right-of-way & drainage and utility easement."

    (4) The Right-of-Way Parcel, the Triangular Parcel, together with two other parcels not completely depicted on the excerpt reproduced above, are designated as "Passive Open Space" areas.

---

    [5]The grey shading and the slash marks are quite distinct on the copy of the Plat included in the record. They are is much less so on the digitally scanned image reproduced in this opinion.

4

(5) Posner signed the Plat as owner. (Posner's signature is not included in the portion of the Plat reproduced above).

The Plat was recorded in the land records in 2000. In 2001, Posner, individually, and on behalf of Posner, LLC, executed and recorded a Cross Easement Agreement. This agreement recited that Posner was the owner and developer of the Emerald Hills Subdivision and that Posner, LLC was the owner and developer of the Greenridge Subdivision. The purpose and effect of the relevant portions of the Cross Easement Agreement was to grant to the owners of the lots in each subdivision reciprocal, but non-exclusive, rights of access and use to the recreational areas and passive open space areas designated on the Plat as well as the plats for other phases of the Greenridge and Emerald Hills subdivisions.

Posner passed away in 2002. In 2006, after a mesne transfer that does not concern us, title to the passive open spaces (including the Triangular Parcel and the Right-of-Way Parcel) in the Emerald Hills Subdivision was conveyed to the Association. The deed did not contain a metes and bounds or other description of the property conveyed; instead, the deed referred to the Plat and the other Emerald Hills subdivision plats.[6]

In 2009, Mr. and Mrs. Peters purchased Parcel 765 from Mr. Sheppard. In 2011, the Peterses applied for an access permit from the County to permit them to construct a

---

[6]Specifically, the deed stated that it passed title to "All that property referred to as 'Passive Open Space' . . . as shown on [the various Emerald Hills subdivision plats] and recorded in the Land Records of Harford County."

5

driveway on the Triangular Parcel that would allow them to connect to Streamview Court. The County approved the application, and the Peterses commenced construction.

The Association filed suit. Along with prayers for injunctive relief and monetary damages, the Association sought a declaratory judgment that the Triangular Parcel was not subject to an easement for the benefit of Parcel 765.

Mr. and Mrs. Peters filed an answer and a motion to dismiss or, in the alternative, for summary judgment. The Association subsequently filed a cross-motion for summary judgment as to its claim for a declaratory judgment. The trial court granted the Association's motion for summary judgment. In reaching its decision, the trial court focused on the legal effect of the Plat and the Cross Easement Agreement. As for the Plat, the trial court determined that:

> A literal interpretation of [the Plat] would seem to indicate that [the Peterses] were entitled by [the Plat] to have the right to use the easement to get on and off of their property.

However, the trial court decided that despite the Plat, the Cross Easement Agreement had extinguished any easement attached to Parcel 765. It stated:

> Even if it is assumed that [the Plat] was intended to give [the owners of Parcel 765] a right to use the [Triangular Parcel] for ingress and egress, this court believes that the actual execution and recording of the [Cross Easement Agreement][7] had the effect of extinguishing this right.

---

[7]The circuit court's written opinion refers to "the specific easement in 2007." So far as we can determine from the record, there was no easement executed in 2007. Language in the declaratory judgment itself makes it clear that the circuit court was referring to the Cross Easement Agreement.

The trial court entered a declaratory judgment to that effect. This appeal followed.[8]

**Analysis**

Whether a trial judge properly granted a motion for summary judgment is a question of law subject to *de novo* review. *Worsham v. Ehrlich*, 181 Md. App. 711*, 723* (2008). A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Id.* In construing the Plat, the Cross Easement Agreement, and the other pertinent documents in this case, our role is to "ascertain and give effect to the intention" of the parties. *Miller v. Kirkpartick*, 377 Md. 335, 351 (2003).

In our view, the circuit court was correct in concluding that the Plat was intended to establish an easement to benefit Parcel 765. Whether the Plat accomplished its intended result is a different, and more difficult, question. As we will explain, we conclude that the Plat was legally sufficient to establish the easement. Neither the Cross Easement Agreement nor any of the other documents cited by the parties changes this result.

**I. An Express Easement**

"An easement may be created by express grant, by reservation in a conveyance of land, or by implication." *USA Cartage v. Baer*, 429 Md. 199, 208 (2012). At both the circuit court and appellate levels, the parties present contentions as to both easements by express grant and easements by implication, specifically, an implied easement established

---

[8]The Association dismissed its trespass claim before the Peterses filed their notice of appeal.

7

by the recordation of a plat. Our focus is on easements by express grant.

As a general rule, express easements "may be created only 'in the mode and manner prescribed by the recording statutes.'" *Kobrine v. Metzger,* 380 Md. 620, 636 (2004) (quoting *Brehm v. Richards*, 152 Md. 126, 132 (1927)).[9] There is no deed granting an easement to the Peterses or their predecessors-in-title. This is not necessarily the end of the analysis because, as the *Kobrine* Court noted, the Court has recognized an exception to the rule enunciated in *Brehm* and other cases:

> In *Dubrowin v. Schremp*, 248 Md. 166, 171 (1967), we limited that requirement to rights of way created by deed and held that a right of way, otherwise sufficiently described, could validly be created by a memorandum

---

[9]There are two relevant recording statutes:

Md. Code Real Property Article ("RP") § 3-101(a) (1974, 2010 Repl. Vol.) provides in pertinent part:

> (a) Except as otherwise provided in this section, no estate of inheritance or freehold, declaration or limitation of use, estate above seven years, or deed may pass or take effect unless the deed granting it is executed and recorded.

> (b) Subsection (a) of this section does not limit any other method of transferring or creating an estate, declaration, or limitation which is permitted by the law of the State except to the extent required by law.

RP § 4-101(a)(1) provides:

> Any deed containing the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted, is sufficient, if executed, acknowledged, and, where required, recorded.

that complied with the Statute of Frauds,[10] i.e., a writing signed by the party to be charged or that party's authorized agent.

380 Md. at 636.

In *Kobrine*, the Court examined whether the plat in question met these requirements. *Id*. at 636. The Court concluded that the plat did not for several reasons: (1) the plat lacked the name and the signature of the grantor; (2) the plat did not specify which lot owners were intended to benefit from the alleged easement; and (3) the plat did not specify for what purpose the easement was intended to be used. *Id.* at 636–37.

Returning to the case before us, the Plat does not suffer from any of these defects. First, both the servient estate (the Triangular Parcel) and the dominant estate (Parcel 765) are identified. Second, the nature of the interest that Posner intended to grant is clear because the Plat explicitly states that the Triangular Parcel is subject to an "ingress and egress easement for access to Parcel 765." Finally, Posner signed the Plat, thus satisfying RP § 5-103. The Court's reasoning in *Kobrine* suggests that the Plat establishes an express easement.

The Association presents several arguments as to why we should not adopt the conclusion set out in the previous paragraph. First, it asserts that the facts of *Dubrowin v.*

---

[10]RP § 5-103 provides in relevant part:

No corporeal estate, leasehold or freehold, or incorporeal interest in land may be assigned, granted, or surrendered, unless it is in writing signed by the party assigning, granting, or surrendering it, or his agent lawfully authorized by writing, or by act and operation of law.

*Schremp*, 248 Md. 166 (1967), are factually distinguishable.

In *Dubrowin,* an exchange of correspondence between neighboring landowners confirmed an oral understanding between them that Schremp would grant a right-of-way over a portion of his property to the Dubrowins. 248 Md. at 168–69. The issue in the case was whether the letters were sufficient to establish the easement. *Id*. at 171. Relying on *Brehm*, 152 Md. at 132, the trial court concluded that there was no easement because the letters did not satisfy the requirements of Maryland's recording statute. *Id.* The Court of Appeals stated:

> With this conclusion we do not agree. The holding in *Brehm* must be confined in its applicability to the facts of that case, or cases like it. In *Brehm,* which involved the use by Richards of a bridge constructed by Brehm on his own land, the record showed that there was no communication between Brehm and Richards at the time Richards . . . commenced to use the bridge . . . . Since there had been no agreement between Brehm and Richards, Richards acquired no title in consequence of the fact that Brehm acquiesced in the use of the bridge by Richards for some eight years.
>
> In the instant case, it is entirely possible that the Dubrowins may have acquired an easement over the land of the Schremps *if the letter written by Schremp on January 29, 1954 can be regarded as sufficient to take the case out of the Statute of Frauds* and if the extent of the encroachment at the time of the writing of the letter can be proved by competent testimony.

248 Md. at 171 (emphasis added; citation omitted).

The Association's observation that *Dubrowin* did not involve a plat is entirely correct but what is important for our purposes is that the Court of Appeals itself applied the *Dubrowin* analysis in *Kobrine*, a case that is factually similar in some aspects to the

one before us. Posner's intentions as to the Triangular Parcel were unmistakably

expressed on the Plat itself and he signed the Plat. In our view, the Court's analysis in

*Dubrowin* is consistent with a conclusion that the Plat established an express easement for

the benefit of Parcel 765.[11]

Second, the Association points to Md. Code Courts and Judicial Proceedings

Article ("CJP") § 5-901 (1973, 2013 Repl. Vol.)[12] and our decision in *MEMC Electronic*

*Materials v. BP Solar*, 196 Md. App. 318, 340 (2010), to support its contention that:

> [M]ore than a writing is required by the Maryland Statute of Frauds in order
> for it to be applicable. There must be evidence of a contract or agreement,
> whether oral or otherwise, between the parties. There was and is no
> evidence of any such agreement, contract, letter, or promise between
> Appellants and Appellee regarding the disputed Triangular Area before this
> action that would support an application of the Statute of Frauds.

---

[11]The *Dubrowin* Court noted that its holding did not extend to cases "involv[ing] the rights of third parties who had no actual notice of the easement." We note that the Association did not dispute that it had notice; additionally the Plat was recorded, thus providing third parties with notice.

[12]CJP § 5-901 provides:

> Unless a contract or agreement upon which an action is brought, or some
> memorandum or note of it, is in writing and signed by the party to be
> charged or another person lawfully authorized by that party, an action may
> not be brought:
> (1) To charge a defendant on any special promise to answer for the debt,
> default, or miscarriage of another person;
> (2) To charge any person on any agreement made on consideration of
> marriage; or
> (3) On any agreement that is not to be performed within 1 year from the
> making of the agreement.

11

This argument is not persuasive. CJP § 5-901, by its plain terms, sets out the circumstances in which contracts must be in writing to be enforceable. The issue before us is not whether the Association is contractually obligated to convey an easement over the Triangular Parcel to the Peterses, or, for that matter, whether Posner was under such an obligation to the Sheppards when he signed the Plat. The relevant question is whether the Plat had the legal effect of subjecting the Triangular Parcel to an easement for the benefit of Parcel 765. To answer that question, we look to RP § 5-103, which we have set out in note 10. And, as we have explained, *Kobrine* instructs that a plat that satisfies the requirements of the statute creates an express easement.

The Association's final argument is that the Plat did not establish an easement for the benefit of Parcel 765 because the Plat "is devoid of expressions such as 'grant,' 'convey,' 'assign,' or 'transfer,' relating to the disputed Triangular Area. There is no language showing a present conveyance or transfer of any interest in realty to Appellants or their predecessors in title." In support of this contention, the Association cites *Bruce v. Dyer*, 309 Md. 421 (1987). We do not believe that *Bruce* supports the Association's position.

At issue in *Bruce* was whether the parties' tenancy by the entireties was severed by the terms of their marital separation agreement, which called for the parties to list the marital residence for sale and to divide any proceeds. *Id.* at 424–25. The Court of Appeals concluded that the separation agreement did not sever the estate. *Id.* at 438. The Court

12

explained that, at common law, spouses who desired to sever a tenancy by the entireties could do so only through a straw deed and that the General Assembly had changed the common law rule by enacting what is now codified as RP § 4-108(b).[13] The Court stated that, although the statute had eliminated the necessity for a straw conveyance, the statute had not changed the requirement that, short of death or an absolute divorce, a tenancy by the entirety could be severed only by deed. The Court concluded that the separation agreement was not the effective equivalent of a deed because it lacked terms, such as "grant," "convey," or "assign" expressing an intent to convey a present interest in the property. *Id.* at 432.

The result in *Bruce* turned, in very large part, on the Court's interpretation of RP § 4-108(b) as requiring a *deed* to sever a tenancy by the entireties.[14] In contrast, *Kobrine* makes it clear that, under certain circumstances, a deed is not required to create an easement. Rather, an easement can be established by a plat if the plat is signed by the

---

[13]RP § 4-108(b) provides in pertinent part:

Any interest in property held by a husband and wife in tenancy by the entirety may be granted, . . . (2) by both acting jointly, to either husband or wife and any other person in joint tenancy or tenancy in common; and (3) by either acting individually to the other in tenancy in severalty, without the use of a straw man as an intermediate grantee-grantor.

[14]The *Bruce* Court's ultimate conclusion was based on additional factors that are not relevant to the issue before us, including the Court's construction of other terms of the separation agreement. *See* 309 Md. at 433–34 ("[T]o read the contract as providing for an immediate termination of the entireties estate would amount to supplying a term completely absent from the existing written language.").

owner, specifically identifies the servient and dominant estates, and is clear as to the rights to be enjoyed by the dominant estate. The Plat meets all of these requirements and accordingly satisfies the Statute of Frauds.

For these reasons, we hold that the Plat established an access easement over the Triangular Parcel for the benefit of Parcel 765.[15] [16] We will now address the parties' contentions as to the 2001 Cross Easement Agreement.

## II. The Cross Easement Agreement

The trial court reasoned that even if the Plat had created an easement benefitting Parcel 765, the Cross Easement Agreement extinguished any such easement. It concluded that, because Posner was responsible for recording both the Plat and the Cross Easement Agreement, he would have specifically referenced the easement over the Triangular Parcel if he had intended to reserve the easement.

---

[15]The Association also asserts that, at the time the Plat was recorded, "Harford County, Maryland [did] not deem the plat as a conveying instrument . . . . Appellants have failed to identify any Maryland appellate case that holds to the contrary." This argument places the shoe on the wrong foot. What is necessary to pass title to interests in real property is a matter of state law, specifically, the provisions of the Real Property Article that we have previously discussed, as well as the opinions of the Court of Appeals and this Court interpreting them. The proposition that Harford County can vary state law in this respect is without foundation. *See McClure v. Montgomery Count Planning Board*, ___ Md. App. ___, No. 1031, September Term, 2013, slip op. at 11 (filed December 2, 2014) ("The general rules for recordation across the entire state . . . are set forth in RP § 3-101." (citing *Washington Mut. Bank v. Homan*, 186 Md. App. 372, 392 (2009)).

[16]Because we have concluded that the Plat established an express easement, it is not necessary to address the parties' implied easement contentions.

14

Mr. and Mrs. Peters contend that this conclusion of the trial court was error, and that the Cross Easement Agreement in fact created an express easement over the Triangular Parcel. The contention stems from the portion of the Cross Easement Agreement entitled "nature of the rights granted," wherein the Cross Easement Agreement states that:

> The easements, restrictions, benefits and obligations set forth in [the Cross Easement Agreement] shall create mutual and reciprocal easements, restrictions, benefits and servitudes upon the land identified as Open Space on the plats enumerated in Schedule A and B, running with the land, which all be perpetual.

The Peterses assert that, because the Plat is one of the plats listed in Schedule B of the Cross Easement Agreement, the ingress and egress easement language contained in the legend of the Plat was affirmed by the Cross Easement Agreement.

The Association counters that the Cross Easement Agreement could not, and did not, affirm any easement contained in the Plat. It argues that the fact that the Cross Easement Agreement was by and between Posner and Posner's LLC, and only contains a right of easement for the lot owners of the Greenridge and Emerald Hills subdivisions, means that the Peterses have no right to an easement under the Cross Easement Agreement.

We agree with neither the trial court nor the parties. We will begin with the Peterses' contentions. The Cross Easement Agreement is, in effect, a deed and Maryland courts construe deeds by using the rules of interpretation of contracts. *See*, *e.g.*, *John B.*

15

*Parsons Home v. John B. Parsons Foundation*, 217 Md. App. 39, 54 (2014) ("'In construing the language of a deed, the basic principles of contract interpretation apply.'" (quoting *Olde Severna Park Improvement Ass'n v. Barry*, 188 Md.App. 582, 611 (2009)). One of these principles is that we search for the parties' intent by considering the instrument as a whole. *John B. Parsons*, 217 Md. App. at 54; *Gunby v. Olde Severna Park Improvement Ass'n*, 174 Md.App. 189, 242 (2007).[17] The purpose of this exercise is to discern "what a reasonable person in the position of the parties would have meant at the time it was effectuated[.]" *White v. Pines Community Improvement Ass'n*, 403 Md. 13, 32 (2008) (interior citation and quotation marks omitted).

The Cross Easement Agreement evidences an intent by Posner and Posner, LLC "to create reciprocal easements to permit *lot owners* of the property shown on the said enumerated plats to enjoy a common right to use and enjoy the open space areas, including 'Passive Open Space' areas depicted on said plats[.]" (Emphasis added.) The Cross Easement Agreement does not explicitly define the term "lot" but we have no difficulty in concluding that Parcel 765 is not a "lot"—in the sense used in the Cross Easement Agreement—of either the Emerald Hills or the Greenridge subdivisions.

This conclusion is based on the fact that the recitals in the Cross Easement Agreement state that Posner and Posner, LLC were the owners of property—"portion[s]

---

[17]Another principle of construction is that "'[w]e construe a deed without resort to extrinsic evidence, if the deed is not ambiguous.'" *John B. Parsons*, 217 Md. App. at 54-55 (quoting *Goss v. C.A.N. Wildlife Trust*, 157 Md. App. 447, 459 (2004). Neither party suggests that the Cross Easement Agreement is ambiguous.

of which have been subdivided to create certain residential lots and open space as . . .

more fully set on [the] [p]lats" referenced in an exhibit. Moreover, the Cross Easement

Agreement recited that:

> As a condition of preliminary plat approval for the said . . . plats, the
> Department of Planning and Zoning did require [Posner and Posner, LLC]
> to create reciprocal easements to permit lot owners of the property shown on
> said . . . plats to enjoy a common right to use and access the open space
> areas . . . depicted on said . . . plats . . . .

To be sure, Lot 765 is depicted on the Plat but that is because it is an abutting

parcel, not because it was established through the subdivision processes that resulted in

the Greenridge and Emerald Hills subdivisions. It would have been illogical for Posner

and his limited liability company *alter ego* to grant to the owner of an adjacent property

rights to use all of the two subdivisions' recreational areas on an equal footing with the

owners of lots within the subdivisions. Thus, we conclude that the owners of Parcel 765

were not intended to be beneficiaries of the easements created by the Cross Easement

Agreement.[18]

On the other hand, we do not believe that the Cross Easement Agreement

extinguished the easement benefitting Parcel 765. As discussed, *supra*, the Cross

Easement Agreement was for the express and exclusive purpose of granting reciprocal

---

[18]In 2001, Brenda Nestor, Posner's personal representative, executed a declaration of covenants for the Emerald Hills subdivision. Mr. and Mrs. Peters argue that the terms of the Emerald Hills declaration of covenants establish an easement for their benefit over the Triangular Parcel. The contention fails for the same reason that their Cross Easement Agreement argument is unpersuasive—there is simply no indication in the declaration that the Ms. Nestor intended the covenants to benefit the owner of Parcel 765.

rights of access over the passive open spaces to the owners of the lots established by the various subdivision plats. Paragraph 2 of the Cross Easement Agreement explicitly states that the easements established by it are "non-exclusive." We see no conflict between the access easement and the Association's members' non-exclusive rights to use and enjoy the passive open space areas in the subdivision.

We are not holding up what occurred in this case as a model for real estate conveyancing. It would have been preferable for Posner to have executed a deed to the Sheppards when he recorded the Plat in 2000. However, judicial interpretation of instruments affecting title to real estate is usually a search for intent. In this case, the relevant intent was that of Victor Posner and, as we have explained, his intentions were explicit. The Plat very clearly identifies the dominant and subordinate estates as well as the nature of the easement and was signed by Posner. In other words, the Plat satisfies the criteria set out by the Court of Appeals in *Kobrine v. Metzger.*

We do not believe that our conclusion works any particular hardship on the Association. The granting clause of the 2006 deed conveying the open space parcels to the Association did not contain any description of the property conveyed but instead expressly referred to the Emerald Hills subdivision plats, including the Plat. Moreover, the Association took title to the property with constructive knowledge of the easement. *See, e.g., Lindsay v. Annapolis Roads Prop. Owners Ass'n*, 431 Md. 274, 291 (2013) ("Under the common law, a reference to a plat in a deed incorporates generally that plat as

part of the deed.").

### III. Proceedings On Remand

In conclusion, we hold that (1) the Subdivision Plat established an express access easement over the Triangular Parcel for the benefit of Parcel 765; and (2) the Cross Easement Agreement had no effect on the access easement. Therefore, the circuit court erred in granting the Association's motion for summary judgment and in denying the summary judgment motion of Mr. and Mrs. Peters. We reverse the court's judgment and remand this case to the court so that it can enter a declaratory judgment consistent with this opinion.

**THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY IS REVERSED AND THIS CASE IS REMANDED TO IT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY COSTS.**