JESSE J. COLE *vs.* WILLIAM M. SINGERLY.

*Construction of contract—Statute of Frauds.*

The defendant, on the 8th of March, 1880, while negotiating for the purchase of a mill, found the plaintiff in charge of the same, and said to him, "If I buy this mill from Mr. P., I will employ you to take charge of it for a year, and will pay you $1000 a year." The plaintiff accepted the offer, and was afterwards notified by the defendant that he had made the purchase. The plaintiff on the day he was so notified, entered the service of the defendant, and was soon afterwards discharged. In an action by him for a breach of the contract, it was HELD:

That, conceding there was a perfect contract entered into by the parties on the 8th day of March, 1880, the remedy upon it was not

barred by the Statute of Frauds, as being for services not to be completed within a year.

When there is a possibility that the services may be performed within a year, the remedy for a breach of the contract is not barred by the Statute.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court. The jury rendered a verdict for the plaintiff on the second count of the declaration for $105.43, and found for the defendant upon the first and third counts. Judgment was entered upon the verdict. The plaintiff appealed.

The cause was argued before MILLER, YELLOTT, ROBINSON, and IRVING, J., for the appellant, and submitted on brief for the appellee.

*Robert C. Thackery*, for the appellant.

*W. T. Warburton, Jr.*, and *Alexander Evans*, for the appellee.

YELLOTT, J., delivered the opinion of the Court.

This is an appeal from the judgment of the Circuit Court for Cecil County, in an action brought by the appellant, the plaintiff below, for an alleged breach of a contract. The declaration contains three counts. The first sets out the special contract; the others being the common counts for " work and labor done," and " an account stated."

It appears from the record that the appellee, a resident of the City of Philadelphia, having entered into negotiations for the purchase of a certain mill, situate in Cecil County, Maryland, and owned by a Mr. Patton, found the plaintiff in charge of said mill, and entered into a conversation with him concerning the property. At the trial of

the cause in the Court below, the plaintiff testified that at that interview, which occurred on the eighth day of March, 1880, the defendant said, "If I buy this mill from Mr. Patton, I will employ you to take charge of it for a year, and will pay you $1,000 a year, and that will be more than three dollars a day;" that the plaintiff then accepted said offer; that the defendant further said, "If I buy the mill I will let you know;" that the plaintiff replied, "all right;" that on the 10th day of March, 1880, the plaintiff received from the defendant a letter dated at Philadelphia, on the 9th of March, signed by said defendant, and admitted by his counsel to be in his hand-writing, in which he says:

"I bought the mill of Mr. Patton. On Thursday I will send two of my employés to see you, and wish you would, together with them, see what is to be done to put the mill in good shape. I propose putting you in charge of the mill, and want to get at work as soon as possible."

The remaining portion of the letter gives directions relative to the management of the property, and the payment of the operatives to be employed.

The plaintiff further testified that on the day and year the said letter was received, he entered the service of the defendant, and continued therein until he was discharged on the twentieth day of April, 1880, at which time he was ready and willing to perform the services agreed upon until the end of the year.

The defendant testified that he had visited the mill on the eighth day of March, 1880, and found the plaintiff there, but denied that he had hired the plaintiff on that day, or on any other day, at a salary of $1,000 or any other sum. He further stated that he had no recollection of having written any letters to the plaintiff, but admitted the hand-writing to be his.

The first prayer of the plaintiff asserts his right to recover on the special contract, if the jury believe he was

employed for the year, commencing on the tenth day of March, 1880, and ending on the tenth day of March, 1881, at a salary of one thousand dollars for the year, and was discharged by the defendant or his agent before the end of the year, and further believe that the plaintiff had faithfully performed his part of the contract and was willing to continue to do so.

The plaintiff's second prayer asserts that the measure of damages is the salary for the whole year, after deducting amount of payments on account of said salary.

The plaintiff's third prayer asks the Court to instruct the jury that there is no evidence in this cause that the dismissal of the plaintiff, if they find he was dismissed by the defendant from his service, was for sufficient cause.

These prayers of the plaintiff were rejected by the Court; and, in conformity with the legal propositions enunciated in the prayers presented by the defendant, and granted by the Court, the jury were instructed,

First. That there was no legally sufficient evidence to entitle the plaintiff to recover on the first count in his declaration;

Secondly. That there was no evidence legally sufficient to entitle him to recover on the third count;

And thirdly. That if the jury should believe, from the evidence, that the defendant employed the plaintiff, and that the plaintiff entered his service on the tenth day of March, 1880, and continued therein until discharged, he was entitled to recover on the *quantum meruit.*

To the rejection of his prayers and the granting of the defendant's prayers, the plaintiff excepted, and thus brings the questions involved in controversy into this Court for final adjudication.

The two first instructions, asked for by the defendant and granted by the Court, being in the nature of a demurrer to the evidence, carry with them a concession of the truth of such evidence, and an absolute negation of all

antagonistic facts adduced in proof by the party applying for such instructions. These instructions would seem to rest solely on the ground that the evidence in the cause disclosed the formation of an unwritten contract on the eighth day of March, 1880, for services which could not be performed within a year, and that such contract could not therefore become the foundation for a successful action; the remedy for its infraction being barred by the operation of the fourth section of the Statute of Frauds. The instructions necessarily bring the whole evidence under review in order that the terms of the contract and the time of its completion may be ascertained. In this inquiry the intention and meaning of the parties are to be sought for. Did they intend to put themselves under the reciprocal obligations of an oral agreement in the conversation on the eighth day of March, 1880? Or did what was then said merely constitute the preliminary negotiation having relation to some prospective arrangement, to be fully perfected at some subsequent period? The language used by the defendant, as disclosed by the record, was, "If I buy this mill, I *will* employ you to take charge of it for a year, and will pay you $1000." He does not say, "I am about to buy this mill, and do now employ you to take charge of it." The language indicates that something was to be done at another and a future period. "I *will* employ you" seems to imply, "I will make a contract with you;" and when it is further said that the plaintiff accepted the offer, the apparent construction is that he used words suggestive of his willingness to enter into the contemplated arrangement, and to complete the contract and become fully bound by its obligations, at any time when the defendant was in a situation to accomplish what he intended. A consideration of the peculiar circumstances at the time when the conversation occurred leads to this conclusion. The defendant did not then own the mill, and there was a possibility that he might never acquire the

property, and these were facts within the knowledge of both parties. Is it to be supposed that the defendant, then and there, intended to contract with the plaintiff to take charge of property which he might never own? Did he on that occasion, with a perfect knowledge of all the facts, deliberately impose upon himself the obligations of a contract which he might never be able to perform? It may safely be assumed that a man of ordinary intelligence would never entangle himself in such difficulties. The words "If I buy this mill I will employ you," would seem to indicate an inchoate arrangement to be fully consummated at some subsequent period, and which being so consummated, might not be within the Statute.

Conceding, however, that there was a perfect contract entered into by the parties to this cause on the eighth day of March, 1880, the remedy is not barred by the Statute of Frauds, and can therefore be enforced. The performance, within the time limited by the Statute, was dependent upon a contingency. The defendant said, "If I buy the mill." This contingency might have happened within an hour after the utterance of these words. In that event, the contract being already operative, the services could have been performed within a year. Judicial construction in England and in this State has placed this question beyond the limits of controversy. In the case of *Fenton vs. Emblers*, 3 *Burrows*, 1281, it is said by DENISON, J.:

"The Statute of Frauds plainly means an agreement not to be performed within the space of a year, and *expressly* and *specifically* so agreed. A contingency is *not* within it; nor any case that depends upon contingency."

This construction of the Statute has received an unqualified recognition in this State. In the case of *Ellicott vs. Peterson's Ex'rs*, 4 *Md.*, 488, it is said:

"These principles have been recognized by innumerable decisions both in England and this country. And in pursuance of the principles which they sustain, especially

Cole *vs.* Singerly.

that of the case of *Peter vs. Compton, Skinner,* 353, it has been held both in England and in these States, the Statute will not apply where the contract can, *by any possibility,* be fulfilled or completed in the space of a year, *although the parties may have intended its operations should extend through a much longer period.*"

The learned Chief Judge who delivered the opinion of the Court in that case supported this construction of the Statute by the citation of a number of authorities, both English and American.

This is therefore no longer a mooted question in Maryland. When there is a possibility that the services may be performed within a year, the remedy for a breach of the contract is not barred by the Statute. This record contains no evidence which shows that the mill was not purchased on the eighth day of March, 1880; and there is a strong probability that this contingency did occur on that day, as the letter of the defendant informing the plaintiff of the purchase is dated in Philadelphia, on the day after. If the parties entered into the contract on the eighth day of March, and the purchase was effected on that day, it was an agreement clearly not within the Statute. The absence of proof as to the precise time of the purchase is fatal to the assumption which seems to have formed the basis of the instructions granted by the Court below.

From what has been said, it follows that there was error in the rejection of the plaintiff's prayers, and in granting the first and second prayers of the defendant.

The judgment must therefore be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 20th June, 1883.)