CLARA CAMPBELL AND CARROLL F. CAMPBELL *vs.*
PAUL M. BURNETT AND WALTER H.
BUCK, RECEIVERS, ET AL.

*Equity*: *pleading; bill for discovery and accounting; parties;*
*need not be partners; general demurrers in equity; stat-*
*ute of frauds and limitations.   Receivers of cor-*
*porations*: *continuing business; subject to*
*duties and liabilities of the*
*corporation.*

A wife had loaned certain jewelry to her husband to be used
by him as collateral in raising a loan; through various trans-
actions the jewelry passed to the hands of C., as security for
a balance due by the husband; the husband sent certain busi-
ness to C., under agreement that, after paying the actual cost
of materials and labor, the profits should be divided, and that
the husband's share should be applied to the payment of the
balance on the loan due to C.   A bill was filed by the wife
*et al.* against the receivers of a corporation, which was the
assignee of C., for discovery, an accounting and the appoint-
ment of a receiver, with a prayer for the return of the jew-
elry and proper application of the profits, should it appear
that the debts so secured, and interest had been paid: *Held,*
that equity had jurisdiction to entertain the bill, and that the
remedy of the parties was not simply in contract, to be en-
forced at law.                                    p. 221

It is not necessary, under all circumstances, that a technical
partnership should exist between parties to an agreement in

order to entitle one to maintain a bill of discovery and account against the other. p. 222

Unless it affirmatively appear that a contract is in parol, the defense of the Statute of Frauds can not be raised in equity by demurrer, but must be by plea or answer. p. 224

If the "year clause" of the statute is to serve as a defense, it must be disclosed by the bill that the contract could not by any possibility be performed within the year. p. 224

Where a contract was to last until a certain indebtedness should be paid, the time for the payment is indefinite, and as the debt might have been paid within the year, the contract is one to which the year clause of the Statute of Frauds did not apply. p. 225

The statute of limitations may be availed of, in equity, by a general demurrer only, when on the face of the bill it can be seen that the bar applies, and where no facts are stated sufficient to relieve the contract from the operation of the statute. p. 226

Certain security had been given to secure the balance due on a debt, which debt was to be paid by the application of certain profits, after deducting therefrom certain charges and expenses; a bill was filed, praying for discovery, an accounting, and for the appointment of a receiver to hold and take charge of the security, and for the statement of an account to show what, if any, of the debt was still due, and for the return of the security, and the proper application of the profits, should it appear that the debt and interest had been fully paid; to such a bill it was *held*, that the statute of limitations was no defense to improper or excessive charges or deductions that had been made before so applying the profits to the extinguishment of the debt. pp. 226-227

The receiver of a corporation, continuing its business, takes the place of the corporation and its officers, for the purpose of performing the corporate duties and functions, and has the same power for such purposes; he is to be held to be substituted for the corporation and to assume its duties. p. 227

*Decided April 8th, 1913.*

Appeal from the Circuit Court for Baltimore City (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*David Ash* and *Charles J. Wiener*, for the appellants.

*C. Baker Clotworthy*, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellants, plaintiffs below, filed their bill in the Circuit Court of Baltimore City against the appellees, in which the facts alleged are substantially as follows:

Clara Campbell, one of the plaintiffs, in the year 1899, loaned unto her husband, J. Vernon Campbell, diamonds and jewelry belonging to her, of the value of about $2,000, to be used by him as collateral security in obtaining a loan of that amount. Subsequently the loan was obtained from one Edward J. Codd, individually, who at such time was conducting a business under the firm name of E. J. Codd & Company, and to him the jewelry was accordingly delivered to secure the payment of said loan. Thereafter Campbell made payments on said indebtedness from time to time, when in 1906 the amount owing upon the loan had been reduced to the sum of $1,087.65.

In or before the year last named, the E. J. Codd Company was or had been incorporated, and the greater part of its stock was held and owned by the said Edward J. Codd, who was "practically the sole proprietor" of said company. At that time J. Vernon Campbell, the owner of certain patent rights purchased by him at the dissolution of the firm of

Campbell-Zell Company, of which he had been the president, "entered into an agreement with the said E. J. Codd Company whereby the said J. Vernon Campbell turned over to and employed the said E. J. Codd Company to do the repair work upon Campbell-Zell boilers as orders for the same might be received from time to time from the users of said boilers, which had been manufactured by the said Campbell-Zell Company under letters patent" aforesaid. And pursuant to this agreement the said J. Vernon Campbell turned over to the said E. J. Codd Company "all his drawings, price lists, list of users, and other valuable data and information relating to said repair business, with the understanding and upon the express agreement with the said E. J. Codd Company that, after the deduction of the actual cost of labor and material used in making such repairs, the balance of the prices and charges obtained for the same should be equally divided between the said E. J. Codd Company and the said J. Vernon Campbell, and that the portion or share of the profits thus arising and belonging to him, the said J. Vernon Campbell, should be paid over to the said Edward J. Codd during his lifetime, and after his death to his executors aforesaid, to be credited and paid on account of the aforesaid loan and the interest thereon, until such time as the said payments should have fully satisfied and paid the same; and that thereupon the collateral security aforesaid should be released from said debt and returned to the complainant, Clara Campbell, and that then and thenceforth the said profits, so far as they belong to the said J. Vernon Campbell, should be paid to him or to his assigns in cash."

The repair business during the existence of the said Campbell-Zell Company was large and lucrative and continued so when thereafter conducted by J. Vernon Campbell individually, yielding to him, as the bill alleges, an annual net profit of from four to six thousand dollars.

Thereafter, during the year 1906, J. Vernon Campbell assigned all his right, title and interest in the agreement to Carroll F. Campbell, one of the plaintiffs, notice of which

assignment was at the time given to the company "and accepted by it," and the agreement continued and remained in full force and effect between the company and the assignee.

In 1908 Edward J. Codd died and William C. Codd and Frank L. Mohler, his executors, conveyed and assigned the debt owing to him by Campbell unto the said company. But upon Campbell's protesting against the delivery of the jewelry to the company, it was agreed that the same should be held by Mohler, one of the executors, until such time as the share of the profits accruing as aforesaid to Campbell or his assignee should be sufficient to pay off said debt in full with interest thereon, whereupon the jewelry was to be returned to Clara Campbell, and all subsequently earned profits were to be accounted for and turned over to Clara F. Campbell in cash.

In 1910 Paul M. Burnett and Wm. H. Buck were appointed receivers for said company, who continued the business of said company, and in doing so, continued the repair work in pursuance of the alleged agreement.

The bill then charges that it is shown by a partial and superficial examination of the books of the company that the profits to which Carroll F. Campbell, assignee, is entitled under the agreement aforesaid, are more than sufficient to liquidate said indebtedness in full and that the surplus, amounting to more than $1,200, is owing unto the assignee, and that Clara Campbell is entitled to have the jewelry returned to her.

"On the contrary, the E. J. Codd Company and its receivers pretend that there remains due to it and to them on account of said loan a balance of several hundred dollars," although neither the said company nor its receivers have ever rendered "a full and fair accounting of the business aforesaid," or of its profits to which the said J. Vernon Campbell or his assignee, Carroll F. Campbell, or either of them, are entitled.

The bill also alleges that exhorbitant and improper charges, not warranted by said agreement, appearing upon the books of the company as overhead charges, amounting to $366 per annum, for upwards of four years, when in each of said years the total net profits credited to the plaintiff did not exceed the sum of $110, have been made against the profits to which the assignee is entitled, in violation of the express understanding between the original parties to the agreement. These charges, it seems were not made until after the expiration of the first year, and were then made without the knowledge and consent of the said J. Vernon Campbell or either of the plaintiffs, although claimed by the defendant receivers to have been properly made under the agreement.

The bill then prays:

*First.* For the appointment of a receiver to "take over and hold the jewelry" mentioned in the bill pending these proceedings.

*Second.* That Burnett and Buck, receivers of the E. J. Codd Company, be required to render to the plaintiffs a full, accurate, detailed and true account of the work done under the agreement aforesaid from the date of the agreement in July, 1906, to and including the date on which the receivers sold the plant and property of the company, etc., "setting forth in detail therein, 1st, the prices charged for such repairs; 2nd, the actual cost of the labor required thereon; and 3rd, the actual cost of the material used thereon and all the sums and amounts credited from time to time on the aforesaid debt due Edward J. Codd by J. Vernon Campbell and the interest calculated upon said debt."

*Third.* "That if said accounting shall show the liquidation and payment in full of said debt and interest, the said jewelry may be decreed to be surrendered to the complainant Clara Campbell."

*Fourth.* "And also that if it shall appear therefrom that a balance over and above the payment of said debt and interest is due on account of and by reason of said profits, a degree may be passed directing the receivers aforesaid to pay

the same to the said Carroll F. Campbell out of any funds of said E. J. Codd Company remaining and being in their hands."

*Fifth.* For general relief.

To this bill the executors of Edward J. Codd filed their answer, in which they admit that the jewelry pledged by J. Vernon Campbell to E. J. Codd, in his lifetime, as collateral security for the loan mentioned in the bill, has come into their possession as executors. In it, however, they allege they have no interest, but have been unable, with safety to themselves, to surrender it because of the claims of both the plaintiffs and the receivers. In their answer they "tender themselves ready and willing to surrender said jewelry to any person whom this Court may designate."

Burnett and Buck, the receivers of the E. J. Codd Company, demurred to the bill:

"*First*—Because more than three years have elapsed since the transactions complained of in the years 1906, 1907 and 1908.

"*Second*—That the alleged agreement of July, 1906, sought to be described in the bill of complaint, was not to be performed within a year, and was not in writing, and therefore of no effect under the Statute of Frauds.

"*Third*—That the plaintiffs have not stated in their bill such a case as entitles them to any relief in equity as against these defendants."

The Court below sustained the demurrer and dismissed the bill. It is from the order of Court sustaining the demurrer and dismissing the bill that this appeal is taken.

We will consider the grounds of the demurrer in their reverse order.

(1) It is to the last of the objections in support of the demurrer that the appellees devote most of their brief, and take the position, as expressed therein, that "the bill in effect asks the Court to enforce the agreement or understanding of 1906 by decreeing that the E. J. Codd Company had no right under the agreement to make the overhead charges

as part of the expense account for the repair work on the Campbell-Zell boilers," and they contend "that the right of action, if any, in the Campbells, is one of simple contract and should be brought in a Court of law."

This is too narrow an interpretation of the object and purpose of the bill as it is shown by the prayers. It certainly cannot be said that this is the object of the plaintiff Clara Campbell, for whether these charges be allowed or not, she is not affected thereby if the debt is paid. It is obvious that the object in filing this bill is to obtain the jewelry to which she is entitled under the contract if the indebtedness has been fully paid. And the primary object of the plaintiff Carroll F. Campbell is to recover what may be owing him out of the profits. Whether these overhead charges shall be allowed or not is merely incident thereto.

The amount of the indebtedness was assigned, as the bill alleges, by the executors of Codd to the E. J. Codd Company, although the jewelry was to remain in the hands of Mohler, one of the executors, until the debt was fully paid, at which time it was to be delivered to the plaintiff Clara Campbell. This indebtedness was to be paid by the borrower out of the profits accruing under the aforesaid arrangement, in the nature of a partnership, made by him with the company. Those profits were not to pass to Campbell or to his assigns until this indebtednes was fully paid. In the meantime, as the bill alleges, they were to be paid to the holder of the indebtedness, and since the assignment to it in 1908, the E. J. Codd Company has been such holder.

Thus it will be seen that the Codd Company was to do the repair work, establish the charges therefor, fix the value of the labor done and the cost price of materials furnished, and upon the division of profits to credit Campbell's part upon the indebtedness. It was only when the profits so credited extinguished the indebtedness that Clara Campbell was entitled to her jewelry, and it was not until then that Carroll F. Campbell was entitled to have paid to him a share of the profits arising from said work. The agreement imposed

no active duties upon the plaintiffs, these were all to be performed by the Codd Company.

It is alleged in the bill that this indebtedness has been paid. The E. J. Codd Company, as the bill discloses, says it has not been paid in full. The executors, under the contract, cannot return the jewelry until it is determined that it has been paid.

The prayer of the bill indicates that the plant or property of the company has been sold and delivered to the purchaser, in which event no further profits are to be acquired under the agreement, to be applied as a credit upon said indebtedness. Therefore, the plaintiffs are entitled to know what is the status or condition of this indebtedness and whether it has been paid or not.

The duty devolved upon the company to so keep its accounts that the amounts received for the work done, the amounts of labor and materials furnished and the charges therefor, and the division of the profits, and the amount credited upon the indebtedness would thereby be disclosed. All of these matters were particularly within the knowledge of the company.

The relations between the parties thereto, created by this agreement, and the duties and obligations imposed upon the Codd Company thereunder, of which the *plaintiffs* are receivers, and upon the receivers, who thereafter assumed the agreement and continued the work threunder, when considered in connection with the other facts and circumstances of this case, in our opinion, entitle the plaintiffs to an accounting and the Court of equity is open to them for the relief sought.

It is not necessary under all circumstances that a technical partnership should be held to exist between the parties to the agreement in order to entitle the plaintiffs to file a bill for discovery and accounting.

As is said in 2 *Beach Equity Jurisprudence,* section 847, "Although parties are not technically partners, yet if the relation existing is that of a quasi-partnership and the

position of the parties sued involved the same trusts, duties and obligations, the right to an accounting exists."

And in the case of *Bruns* v. *Spalding,* 90 Md. 349, Spalding, the owner of a tract of land, entered into an agreement with Singer by which it was stipulated that Singer should procure a builder to erect a number of houses thereon and assist in obtaining materials, etc., and that Spalding should make a bonus advance to the builder. Upon the completion of the houses the ground rents thereon were to be sold by Spalding at a designated capitalization. From the proceeds of sale he was to receive the amount paid by him for the land and the amount advanced as a bonus, with interest on these sums, and the remainder of the proceeds of sale was to be equally divided between Spalding and Singer. The builder of the houses failed before they were finished, and a receiver was appointed.

Singer made arrangements with the creditors and receiver to complete the houses, and in pursuance of it borrowed money from Bruns, to whom he agreed to assign his interest in the profits as security. The houses were finished and Bruns as assignee of Singer filed a bill against Spalding alleging the sale by him of some of the ground rents and a refusal to sell others at the valuation agreed upon, and asked for a discovery and accounting and the appointment of a receiver.

In that case JUDGE BOYD approvingly cites the case of *Scudder* v. *Budd,* 52 N. J. Eq. 320, in which case the complainant and defendant made a parol agreement to build houses for sale, the latter to advance the money and the former to contribute his skill and time, each to have half of the profits after sale. It was held that, independent of the question whether a partnership existed between the parties, the complainant was entitled to maintain a bill for accounting.

The opinion quotes from and cites a number of other authorities in support of this principle, and it concludes by saying: "So whether Spalding and Singer were, technically speaking, partners or not (although they were held to be

partners) the latter would be entitled to file a bill for discovery and accounting under such circumstances as are alleged in the bill. The case of *Union Pass. Ry. Co.* v. *Mayor, etc., of Baltimore,* 71 Md. 238, might also be referred to as supporting this view."

(2) We have no difficulty in reaching a conclusion as to the second ground of the demurrer. It does not, in our opinion, fall within the *Statute of Frauds.* In the first place, it is not shown by the bill that the agreement was not in writing. "Unless it affirmatively appears that the contract is by parol, it will be presumed to be in writing, and the demurrer will not hold. In such a case the statute must be insisted upon in a plea or answer." 1 *Beach Modern Eq. Pr.* sec. 260.

Moreover, it is not disclosed by the bill that the contract could not be performed within one year.

"It has been held both in England and in these States, the statute will not apply where the contract can, *by any possibility,* be fulfilled or completed in the space of a year, *although the parties may have intended its operation to extend through a much longer period. * * * A* contract to serve for an indefinite period, subject to be put an end to at any time upon reasonable notice, is not within the statute though it may extend beyond the year." *Ellicott* v. *Peterson,* 4 Md. 488, and the authorities there cited; *Cole* v. *Singerly,* 60 Md. 353.

In this case the contract was to last until the indebtedness was paid, the time thereafter was indefinite. It is alleged in the bill that the net profits acquired from the repair work by the Campbell-Zell Company and J. Vernon Campbell thereafter amounted annually to from four to six thousand dollars. At the time this agreement was made there was owing upon this indebtedness a little over one thousand dollars. So it was by no means impossible to have paid this indebtedness in full from the profits accruing to Campbell under this contract within one year, and after the payment of said indebtedness the contract was indefinite and could

have been terminated at any time. In fact, Campbell could well have believed, from the amount of net profits of the business when conducted by the Campbell-Zell Company and by him thereafter, that it would be paid before the expiration of one year.

(3) The first objection urged against the bill in support of the demurrer is, that more than three years have elapsed since the transactions complained of in the years 1906, 1907 and 1908. The transactions here referred to are the acts of the E. J. Codd Company and its receivers in charging overhead charges, as alleged in the bill.

The bill in this case was filed in December, 1911. The receivers were appointed in 1910, and the bill alleges that the work was continued under this agreement by the receivers after their appointment, although to what date is not stated. It will thus be seen that the years 1906, 1907 and 1908 do not cover the entire time in which profits are said to have been earned, or in which the charges complained of were made.

The bill alleges that the agreement referred to was made in the year 1906. It is indicated by the prayer of the bill that it was in July, 1906, about five years and six months before the filing of the bill. The bill alleges that these charges were not made in the year immediately succeeding the execution of the contract. Thus only for eighteen months of the period named in the demurrer were such charges made.

If, by reason of the operation of the Statute of Limitations, these overhead charges should not now be disturbed, but should remain charged against the plaintiffs, the statute could not so operate upon the charges made in the succeeding years within this statutory limit, and therefore this ground of the demurrer does not go to the whole bill and does not warrant its dismissal. But as we are to reverse the order of the Court and remand the case for further proceedings, we will pass upon the demurrer so far as it applies

to or affects the charges within the period of the eighteen months referred to.

This Court has held that this defense may be availed of under general demurrer where, from the face of the bill, it can be seen that the bar applies and where no facts are stated sufficient to relieve it from the operation of the statute. *Belt* v. *Bowie,* 65 Md. 355; *Biays* v. *Roberts,* 68 Md. 511. Thus the inquiry in such cases should be, can it be seen from the face of the bill that the bar applies, and are there no facts sufficient to relieve it from the operation of the statute? We will not repeat the facts of this case as we have already very fully stated them.

The effect of the statute, if applied as here attempted, would be to permit the overhead charges complained of to stand against the profits, without the right of a Court of equity to interpose and investigate the correctness of such charges.

The application of the statute, with the results we have stated, is sought in this case, notwithstanding the fact that these charges were made by the company, and of which charges the plaintiffs and Campbell had no knoweldge whatever until a short time before the bill was filed in this case.

In our opinion, upon the facts of this case as alleged in the bill, these charges should not be treated as being removed from the consideration of a Court of equity by the operation of the *Statute of Limitations.* Especially, inasmuch as the collateral held as a security for the payment of the debt aforesaid, or so much thereof as may be necessary, can now be sold (if the original agreement conferred upon the pledgee the right to sell the property for the payment of the debt) for the purpose of paying any unpaid balance of said debt, even though such indebtedness should be barred by the *Statute of Limitations.* 31 *Cyc.* 819. To permit the defendants to avail themselves of the lapse of time in respect to these charges—acts of theirs—which until a short time before the filing of the bill were unknown to the plaintiffs or Camp-

bell, or either of them would, we think, be unjust and inequitable to the plaintiffs in his case.

(4) This brings us to the grounds upon which the Court below bases its conclusion in sustaining the demurrer and dismissing the bill. The learned judge below in his opinion says: "These receivers are merely officers of the Court for the impartial administration of the corporate assets placed in their hands, strangers both to the transactions involved and to the book entries upon the transactions, and are not appropriate officers for absolving any fiduciary duties or obligations of the dissolved corporation." And that it is "no part of the proper functions of receivers to investigate and make up separate accounts of the various claimants to portions of the assets."

We can not agree with the Court below that the receivers "are strangers both to the transactions involved and to the book entries upon the transactions." It will be recalled that the bill alleges that the receivers upon taking over the affairs of the company, continued the business of the company, and in doing so, assumed the agreement aforesaid, and continued to do the repair work under such agreement. Thus it cannot be said that they were strangers to the transactions or to the entries upon the books made in connection therewith.

It is said in 34 *Cyc.* 244 and 410, that "The receiver of a corporation conducting its business takes the place of the corporation and its officers, for the purpose of performing the necessary corporate duties and functions, and has the same power for such purposes. He is held to be substituted for the corporation and to assume its duties."

It was, as we said, the duty of the corporation, before the appointment of receivers therefor, to keep an accurate account of all amounts received by it for such repair work and the amounts of labor and materials furnished and the charges therefor. So it was the duty of the receivers who after their appointment conducted the business and affairs of the corporation and assumed this agreement and continued the work

thereunder, to continue to keep such an account. As was said of the company, these matters were peculiarly within their knowledge. The account kept by the receivers for repairs made by them was but a continuation of the account kept by the corporation prior thereto. This was necessary in order to comply with the agreement, for the profits retained by the receivers were to be added to the profits retained by the company so that it could be ascertained when such profits in the aggregate were sufficient to cancel and extinguish the indebtedness to which they were applied.

Had the company continued the management and conduct of its business, the plaintiffs would have been entitled to an accounting by it, but as it did not and receivers were appointed therefor, who continued the management and conduct of its affiairs, the plaintiffs are entitled to an accounting by the receivers, not only for the period in which the work was performed by them, but also for the time in which the work was done by the company.

From what we have said, we will reverse the decree appealed from.

> *Decree reversed and cause remanded for further proceedings, the costs in this Court to be paid by the appellees; the costs below to await the final decision of the case.*