666 A.2d 1298

**FRIEDMAN & FULLER, P.C.**

v.

**Gregg N. FUNKHOUSER, et al.**

**No. 151, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Nov. 6, 1995.

92

Roy Niedermayer (Shawn, Mann & Niedermayer, L.L.P., on the brief), Washington, DC, for Appellant.

John E. Prominski, Jr. (Wilkes, Artis, Hedrick & Lane, Chartered, on the brief), Washington, DC, for Appellees.

Argued Before WENNER, FISCHER and CATHELL, JJ.

CATHELL, Judge.

Appellant, Friedman & Fuller, P.C. (F & F), appeals entry in the Circuit Court for Montgomery County of summary judgment in favor of the appellees, Gregg Funkhouser (Funkhouser), and Hollrah & Bernstein, P.C., and its principals, Jeffrey Bernstein and Glenn Hollrah (collectively, H & B). Appellant brought suit, alleging, *inter alia*, breach of an employment contract with Funkhouser, to which appellees asserted a Statute of Frauds defense. On appeal, appellant poses the following questions for our review:

1. Did the trial court err by granting summary judgment based on the Maryland Statute of Frauds where Funkhouser acknowledged the existence of an agreement in his deposition testimony?

2. Did the trial court err by granting summary judgment based on the Maryland Statute of Frauds where Funkhouser signed [ ] one of several connected writings constituting the entire memorandum?

3. Did the trial court err by granting summary judgment based on the Maryland Statute of Frauds where F & F's performance removed the Employment Agreement from within the Statute of Frauds?

4. Did the trial court err by granting summary judgment based on the Maryland Statute of Frauds where Funkhouser's promises to prepare and sign a writing estopped him from raising the Statute of Frauds as a defense to the Employment Agreement?

5. Did the trial court err by granting summary judgment based on the Maryland Statute of Frauds where the parties intended to save provisions performable within a year even if other provisions were unenforceable under the Statute of Frauds?

6. Did the trial court err by granting summary judgment on F & F's interference with contract and p[ro]spective business advantage claims solely because the Employment Agreement was not enforceable under the Statute of Frauds?

## THE FACTS

Funkhouser was hired by F & F in July of 1990 to market the firm's accounting services to government contractors. In July of 1992, Funkhouser and F & F's president, Barry Friedman, began negotiating a new employment relationship, under which Funkhouser would be placed on a track leading him toward an ownership interest in the firm. In drafting the agreement, Funkhouser and F & F worked from a sample contract normally used by F & F, on which Funkhouser noted modifications in accord with the negotiations. Funkhouser agreed to draft and present for signature a memorial of the agreed-upon terms and modifications of the sample contract. The proposed terms allegedly included, *inter alia,* the non-competition and trade secrets provisions at issue in the instant case. Also incorporated within the contemplated agreement were provisions respecting Funkhouser's acquisition of an ownership interest in F & F. Specifically, Funkhouser was to receive a retroactive salary increase of $5,000 and "career path incentive" bonuses upon the achievement of differing levels of total sales revenues.

It is undisputed that Funkhouser began drafting the agreement, utilizing F & F's computers and that, on August 3, 1992, consonant with the as yet unmemorialized employment agreement, he applied for and received a specified bonus and increase in salary for achieving $250,000 in total sales, benefits he would not otherwise have been entitled to receive previously. As of the receipt of the benefits, a written rendering of the agreement had not been completed.

In the fall of 1992, Funkhouser requested and was granted a change in the noncompetition provision. Again, Funkhouser agreed to memorialize the agreement to conform with the negotiations. Indeed, Funkhouser had prepared several revisions of the agreement as the negotiations progressed and terms were refined and finalized. In his affidavit, Friedman avers that, between January and May of 1993, his repeated requests for a copy of the completed agreement went unheeded; Funkhouser assured him that the draft, encompassing all

agreed-upon terms and modifications, was completed and affirmed his commitment thereto but failed to produce one bearing his signature.

Although the precise date is not clear, by the middle of 1993, Funkhouser had begun discussions regarding employment with H & B. It was also around that time that F & F began detecting a "deterioration" in Funkhouser's work product. On August 9, 1993, Funkhouser tendered his resignation from F & F and began working at H & B. F & F alleges that Funkhouser then "immediately" began soliciting its clients. On December 23, 1993, F & F filed a Complaint, naming Funkhouser as a defendant, seeking injunctive relief and damages for Funkhouser's alleged violation of the noncompetition and trade secrets provisions of the employment agreement. As discovery progressed, F & F verified H & B's involvement in the matter and, on May 2, 1994, amended its Complaint to include H & B. In addition to seeking permanent injunctive relief against appellees for breach of the covenant and misappropriation of trade secrets (Count 1) and damages therefor (Counts 2, 3, and 6), F & F also sought damages for fraud and negligent misrepresentation (Count 4), tortious interference with prospective business advantage and unfair competition (Count 5), civil conspiracy (Count 7), and conversion (Count 8).

On May 16, 1994, appellees filed their Answer, along with a Motion to Dismiss Amended Complaint. In the motion, appellees sought dismissal of Counts 1, 2, 4, 5, and 7 on Statute of Frauds grounds, supporting same with Funkhouser's affidavit attesting to his failure to sign the agreement. Pursuant to Rule 2–322(c),[1] appellees' motion was considered to be a

---

1. That Rule reads, in pertinent part:

 **(c) Disposition.**— ... If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

motion for summary judgment. Appellant opposed the motion, relying on, *inter alia,* Barry Friedman's affidavit. The trial court ordered that summary judgment be entered in favor of all appellees on counts 1, 2, 4, and 7 on September 28, 1994. Appellant agreed, per Rule 2–506(a), to a voluntary dismissal of the remaining claims, without prejudice, rendering the September 28, 1994 Order final for purposes of appeal. Appellant then noted this appeal from that Order.

## THE STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, we are concerned with whether a dispute of material fact exists. *King v. Bankerd,* 303 Md. 98, 110–11, 492 A.2d 608 (1985). *See also Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144, 642 A.2d 219 (1994); *Arnold Developer, Inc. v. Collins,* 318 Md. 259, 261–62, 567 A.2d 949 (1990); *Bachmann v. Glazer & Glazer, Inc.,* 316 Md. 405, 408, 559 A.2d 365 (1989); *Nationwide Mut. Ins. Co. v. Scherr,* 101 Md.App. 690, 694, 647 A.2d 1297, *cert. denied,* 337 Md. 214, 652 A.2d 670 (1994); *Markey v. Wolf,* 92 Md.App. 137, 170, 607 A.2d 82 (1992). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King,* 303 Md. at 111, 492 A.2d 608 (citing *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974)). "A dispute as to a fact 'relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment.' " *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 242–43, 603 A.2d 1357 (1992) (quoting *Salisbury Beauty Schs. v. State Bd. of Cosmetologists,* 268 Md. 32, 40, 300 A.2d 367 (1973)). In order for there to be disputed facts sufficient to render summary judgment inappropriate, "there must be evidence on which the jury could reasonably find for the plaintiff." *Seaboard,* 91 Md.App. at 244, 603 A.2d 1357. If the motion and response thereto demonstrate that there is no

*See also Hrehorovich v. Harbor Hosp. Ctr., Inc.,* 93 Md.App. 772, 614 A.2d 1021 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993).

genuine dispute as to any material fact, the moving party is entitled to judgment as a matter of law. *See Lowman v. Consolidated Rail Corp.*, 68 Md.App. 64, 70, 509 A.2d 1239, *cert. denied*, 307 Md. 406, 514 A.2d 24 (1986) (Once the moving party has provided the trial court with sufficient grounds for summary judgment, "[i]t is ... incumbent upon the other party to demonstrate that there is indeed a genuine dispute as to a material fact."). *See also King*, 303 Md. at 112, 492 A.2d 608; *Hurt v. Stillman & Dolan, Inc.*, 35 Md.App. 644, 647, 371 A.2d 1137 (1977).

## DISCUSSION

### A.

Appellant avers that there existed a genuine issue of material fact as to the existence of a memorandum sufficient to satisfy the Statute of Frauds or sufficient to except it from the Statute's requirement of a writing, so as to preclude entry of summary judgment in favor of Funkhouser. We agree and reverse the judgment of the trial court in that respect. We explain.

In approaching any matter potentially involving the Statute of Frauds, we first determine whether the case is one that falls within its provisions, as set forth in Maryland Code (1957, 1993 Repl.Vol.), Art. 39C § 1. If it does, we address the sufficiency of the writing involved; otherwise, the Statute is not applicable. If the writing contains the requisite formalities, our inquiry ceases. If not, we look to find whether the contract is enforceable under equitable theories of estoppel or part performance. *See Snyder v. Snyder*, 79 Md.App. 448, 558 A.2d 412, *cert. denied*, 317 Md. 511, 564 A.2d 1182 (1989).

### 1.

### APPLICABILITY OF THE STATUTE OF FRAUDS

In order to prevent fraud against one sought to be charged under a contract, the law has determined that certain contracts are so subject to prevarication that they shall not be

enforced unless in writing. Contracts to which this rule is made applicable are enumerated in the Statute of Frauds, which "grew out of a purpose to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendoes." 72 Am.Jur.2d *Statute of Frauds* § 7 (1974). Although the Statute requires any contract that falls within its scope to be in writing or evidenced thereby, we note that it in no way divests the parties of the right to contract; it merely governs the procedures to which they must adhere so as to render their contract enforceable. *See Baldwin v. Grymes,* 232 Md. 470, 475, 194 A.2d 285 (1963) (The Statute affects only the remedy sought and not the validity of the contract at issue.). Finding its origins in and modeled after the English statute, An Act for the Prevention of Frauds and Perjuries, 29 Car. 2, ch. 3 (1676) (Eng.), the Maryland Statute of Frauds reads, in pertinent part:

No action may be brought:

. . . .

(3) Upon any agreement that is not to be performed within the space of one year from the making thereof[.] Unless the . . . agreement . . . or some memorandum . . . is in writing and signed by the party to be charged. . . .

It is with subsection (3) that we concern ourselves in the case *sub judice.*

Subsection 3 of Maryland's Statute of Frauds comprises what is known as the one-year provision of the Statute encompassing those contracts that cannot possibly be completely performed within a year. *See Ellicott v. Turner,* 4 Md. 476, 488 (1853); *Restatement (Second) of Contracts* §§ 110(e), 130 cmt. a (1981). The one-year period commences upon the completion of the agreement, *i.e.,* generally, when the offer is accepted, and "does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities." *Restatement (Second) of Contracts* § 130 cmt. a (1981). *See also General Fed. Const., Inc. v. James A. Federline, Inc.,* 283 Md. 691, 695, 393 A.2d 188 (1978); *Campbell v. Burnett,* 120 Md. 214, 224, 87 A. 894 (1913). A contract

that fails to specify any time frame within which its terms are to be fulfilled is a contract of indefinite duration, and is not within the Statute, though it may extend beyond the year. *Ellicott,* 4 Md. at 488; *Campbell,* 120 Md. at 224, 87 A. 894. *See also Restatement (Second) of Contracts* § 130 cmt. a (1981).

■ There are two situations in which the one-year provision will operate to bar a claim:

> One occurs when the parties " 'expressly and specifically' agree[ ] that their oral contracts [are] not to be performed within one year." *Sun Cab Co. v. Carmody,* 257 Md. 345, 350[, 263 A.2d 1] (1970). The other occurs when it is impossible by the terms of the contract for it to be performed fully within one year. *Chesapeake Financial Corp. v. Laird,* 289 Md. 594, 600[, 425 A.2d 1348] (1981).

*Griffith v. One Inv. Plaza Assocs.,* 62 Md.App. 1, 5, 488 A.2d 182 (1985).

■ The covenants to which Funkhouser is subject are alleged[2] to be as follows:

### 9. *Non–Competition Agreement.*

(a) Upon termination of this Employment Agreement: (1) the Employee shall *not* be entitled to perform the same or similar services (services defined as client development of government contractors) as those rendered for the Corporation for another individual, firm, association, partnership, corporation, group, other person, or entity (together and individually, an "Entity") located within the Washington metropolitan area for a period of one (1) year; (2) the Employee will not directly or indirectly induce any clients of the Corporation or FF & I or F & F to patronize any person, firm, or association rendering products or services

---

2. Although F & F states that it located the completed agreement within Funkhouser's personal effects at F & F, we find none in the record and, thus, extrapolate what we perceive to have been the provisions at issue from the briefs and extract.

similar to those rendered by the Corporation hereinafter referred to as the Competitor, within the Washington metropolitan area for a two (2) year period following termination of this Employment Agreement, nor will the Employee directly or indirectly handle, manage, supervise, render or perform any service for a client of the Corporation similar to those rendered by the Corporation for or on behalf of the Competitor within the Washington metropolitan area for a two (2) year period following termination of the Employment Agreement.

(b) In the event of a breach of Provision 9(a)(1), the Employee agrees to pay the Corporation fifty thousand ($50,000) dollars within sixty (60) days f[rom] the date of such breach.

(c) In the event of a breach of Provision 9(a)(2), the Employee agrees to pay the Corporation an amount equal to the fees billed by the Corporation ("F & F Fees") to the applicable client during the two (2) year period prior to and ending on the earlier of the date (the "Engagement Date") the Employee or Competitor (i) began providing Accounting Services [to] the Corporation client or (ii) accepted an engagement to provide Accounting Services to that Corporation client. Said amount shall be paid in full to the Corporation within fifteen (15) days after the Engagement Date.

. . . .

(e) In the event that a court of competent jurisdiction shall determine in any case that the enforcement of the covenant contained in Section 9(a) or (b) would not be reasonable, but that enforcement of a covenant which is more limited in time or geographic area would be reasonable, it is intended that the more limited covenant determined by such court to be reasonable shall be given effect in such case in lieu of the covenant contained in Section 9(a) or (b).

. . . .

11. *Proprietary Information.* All files, work papers, spreadsheets, records, financial information, data base information, and similar items (including any photocopies or electronic media versions of any of the above) relating to the Corporation as well as any Corporation client or prospective client, whether prepared by the Employee or otherwise coming into the Employee's possession, will at all times remain the exclusive property of the Corporation. The Employee agrees not to make or retain copies of such materials and to deliver promptly upon the Corporation's written request all such materials in his/her possession after the date of termination of this Employment Agreement.

In *General Fed. Constr., Inc. v. James A. Federline, Inc.,* *supra,* 283 Md. 691, 393 A.2d 188, Federline submitted a bid to do mechanical work on a project headed by General Federal Construction (GFC). GFC used Federline's bid in submitting its own bid, but then awarded the subcontract to another firm. Federline brought suit based on the alleged breach of "an express oral agreement," *i.e.,* the bid. 283 Md. at 692–93, 393 A.2d 188. GFC unsuccessfully asserted a Statute of Frauds defense at the trial court level, relying on Art. 39C § 1(3). Though the underlying mechanical work could have been performed within one year, the Court of Appeals noted that certain other obligations under the contract, such as maintenance and inspections, were not scheduled to be, and could not begin to be, performed until *after* completion of the project, rendering § 1(3) of the Statute applicable.

Similarly, when faced with an action under an oral employment contract, in *Collection & Investigation Bureau of Maryland, Inc. v. Linsley,* 37 Md.App. 66, 375 A.2d 47 (1977), we held that the covenant not to compete "for a period of two . . . years immediately following termination of employment," 37 Md.App. at 69, 375 A.2d 47, contained within a one-year employment agreement was within subsection (3), the one-year provision of the Statute, because, by its terms, it could not be performed in less than two years. *Id.* at 73, 375 A.2d 47.

The trial court therefore properly concluded that the Statute of Frauds applied to the matters presented herein. We shall now determine what the Statute's provisions require and whether they were complied with in the instant case.

## 2.
### THE WRITING REQUIREMENT OF THE STATUTE OF FRAUDS

Operating to render unenforceable certain contracts by reason of their failure to conform with the requisite formalities, Maryland's Statute of Frauds requires that

> the contract or agreement upon which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged, or some other person lawfully authorized by him.

Art. 39C § 1. The writing must contain the names of the parties, set forth the contract's terms and conditions, describe the subject matter of the contract, and be signed by the party to be charged. *Beall v. Beall*, 291 Md. 224, 228–29, 434 A.2d 1015 (1981); *Forsyth v. Brillhart*, 216 Md. 437, 440, 140 A.2d 904 (1958); *Snyder*, 79 Md.App. at 453, 558 A.2d 412; 72 Am.Jur.2d *Statute of Frauds* § 295 (1974); *Restatement (Second) of Contracts* § 131 (1981). It is with the last of these requirements that we now concern ourselves.

Appellant asseverates that, despite the lack of a formally signed contract, a memorandum satisfying the Statute exists by virtue of "Funkhouser's signing of one of several connected writings referencing the Employment Agreement." [3] By this, appellant refers to the Monthly Commission Report Funkhouser filed on August 3, 1992 to receive his first bonus and salary increase after achieving $250,000 in total sales. In that report, after writing his name at the top, Funkhouser wrote

---

**3.** While we shall reverse for other reasons, the extract contains an agreement that, though not signed above a formal signature block, appellee admits contains his signature, in his handwriting, at the top of the title page. It may, itself, satisfy the Statute's requirement of a signed writing.

"$250,000—BONUS" and "$5,000" in the appropriate columns. In view thereof, appellant urges us to conclude that this, in conjunction with the unsigned agreement, met the formalities of the Statute: "This was an unequivocal internal reference to the career path incentive terms and compensation chart of the ... Employment Agreement."

██ Appellees do not agree; they argue, citing Judge Delaplaine's language in *Sinclair v. Weber*, 204 Md. 324, 332, 104 A.2d 561 (1954), that in order for multiple writings (only one of which bears the signature[4] of the party to be charged) to conform to the Statute of Frauds, one of the following must exist:

(1) the signed writing is physically annexed to the other writing by the party to be charged, or (2) the signed writing refers to the unsigned writing, or (3) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings.

Appellees assert that none of these is met on the facts presented. We do not agree, particularly in regard to (3).

██ Appellees state that "there is nothing in the Monthly Commission Report, the Draft Agreement or any other document in the record to show that the Monthly Commission Report was initialed with reference to the noncompetition provisions of the Draft Agreement." It is undisputed that, in the case *sub judice*, Funkhouser wrote his name on the Report. Thus, it constituted a signature and shall be so regarded for purposes of this discussion. Appellees misconstrue the logic and intent of the third option set out by Judge Delaplaine—"reference to the unsigned writing[ ]" does not mean that reference in a signed writing to one portion of an unsigned writing rather than the unsigned writing as a whole precludes its characterization as a memorandum sufficient to

---

4. "[I]t has been recognized that a printed name constitutes a sufficient signature under the Statute of Frauds, provided that it is recognized by the party sought to be charged." *Dubrowin v. Schremp*, 248 Md. 166, 172, 235 A.2d 722 (1967). *See also Drury v. Young*, 58 Md. 546, 554 (1882).

satisfy the Statute of Frauds when read in conjunction with that signed writing. The "reference" Funkhouser made in the Report was to the incentives and bonus portions of the contract. The fact that the noncompetition and trade secrets provisions were located separate and distinct from the incentive provisions does not preclude the ability to characterize the "reference" as one to the contract *in toto.* Otherwise, no signed writing referencing one portion of an unsigned writing would ever constitute a memorandum complying with the Statute. Accordingly, and in view of our note as to the appearance of an informal signature on a copy of a related writing, we question the correctness of the trial court's conclusion that there was not a sufficient memorandum in this case to take it out of the Statute of Frauds.

### 3.
### ESCAPE MECHANISMS

Moreover, the Statute of Frauds is not completely dispositive of the enforceability *vel non* of a contract falling within its provisions. Certain actions under a contract by either one or both parties may be characterized as having effectively taken the contract out of the Statute, thus rendering it enforceable, despite the absence of a duly evidenced writing. Indeed, in the absence of such a qualified writing, courts often look to equity as a basis for relief.

### a. Part Performance

We note, as a predicate to our discussion, that a remedy is available on an oral contract within the Statute based upon part performance if the facts present a case for equitable relief. *See Unitas v. Temple,* 314 Md. 689, 701, 552 A.2d 1285 (1989); *Winternitz v. Summit Hills Joint Venture,* 73 Md.App. 16, 22–23, 532 A.2d 1089 (1987), *cert. denied,* 312 Md. 127, 538 A.2d 778 (1988); *Restatement (Second) of Contracts* § 129 (1981).

The doctrine of part performance is premised upon the notion that to allow a party to escape his performance of

an oral agreement after he has permitted the plaintiff to perform in reliance on both the agreement and the defendant's inducements would effect a fraud upon the plaintiff. We note that part performance is not a substitute for the writing required by the Statute but rather, it may be viewed as a means to estop the defendant from asserting the Statute as a defense. *See* 73 Am.Jur.2d *Statute of Frauds* §§ 399, 400 (1974). We further note that

> "part performance will not make an oral contract enforceable unless it is such as to be directly 'referable' to that contract. . . .
>
> . . . .
>
> . . . [T]he part performance must be clearly evidential of the existence of a contract—it must be such as would not ordinarily have taken place in the absence of a contract and therefore is not reasonably explicable on some other ground."

*Unitas,* 314 Md. at 702, 552 A.2d 1285 (quoting 2 A. Corbin, *Corbin on Contracts* § 430 (1950) (footnotes omitted)). *See also Hamilton v. Thirston,* 93 Md. 213, 219, 48 A. 709 (1901); *Snyder,* 79 Md.App. at 456, 558 A.2d 412 (" '[T]he acts of part performance must be such as show that some contract exists between the parties; that they were done in pursuance thereof, and that it is not inconsistent with the one alleged in the pleading.' " (quoting *Unitas,* 314 Md. at 708, 552 A.2d 1285)). Indeed, "the part performance itself 'must furnish evidence of the identity of the contract; and it is not enough that it is evidence of *some* agreement, but it must relate to and be unequivocal evidence of the *particular* agreement. . . .' " *Beall, supra,* 291 Md. at 230, 434 A.2d 1015 (quoting *Semmes v. Worthington,* 38 Md. 298, 326–27 (1873) (some emphasis omitted from original)). *See also Mann v. White Marsh Properties, Inc.,* 321 Md. 111, 117–18, 581 A.2d 819 (1990) (The Statute of Frauds "is not satisfied by part performance based upon acts that are equivocal as to the existence of a contract.").

We find the Court of Appeals's reasoning in *Semmes v. Worthington, supra,* particularly instructive in addressing the propriety *vel non* of applying the doctrine of part performance to the case *sub judice.* In *Semmes,* a nephew and his uncle had an arrangement whereby the former worked on the latter's farm as a tenant. The two had a falling out and the nephew left the farm. He returned shortly thereafter, upon the uncle's promise that he would inherit the farm after his uncle's death. Nevertheless, the uncle's will made no such provision, and the Court concluded that the nephew's "partial and subordinate possession" of the farm was, "to make the most of it, an equivocal act, *susceptible of a variety of interpretations,* and affording no evidence or presumption whatever of the particular contract alleged." 38 Md. at 326 (emphasis added). As opposing counsel in *Semmes* pointed out, the nephew's "occupation was of precisely the same nature before he quitted the farm that it was after his return to it." *Id.* at 309. Indeed, it appeared that the work the nephew performed would have been undertaken whether or not the contract existed. For that reason, the *Semmes* Court held that the nephew's actions could not be unequivocally referable to the alleged oral contract he sought to have enforced.

 The same cannot be said for the facts presented in the case *sub judice.* Funkhouser's acceptance of bonus monies from appellant cannot be construed as anything other than compensation pursuant to the employment agreement Funkhouser now seeks to avoid. Funkhouser was not otherwise entitled to such payments, and F & F would not have paid same in the absence of what it perceived to be a legally binding contract. There can be no other interpretation of the facts. F & F's actions in paying the bonuses and Funkhouser's acceptance of them can only be attributed to the parties' adherence to the agreement. But for the agreement, appellant had no other obligation to pay the bonuses and Funkhouser had no other right to receive the money. Based on the facts available, prior to the agreement, appellant and Funkhouser were not in a relationship that afforded or potentially would have afforded Funkhouser such benefits. The pay-

ments, therefore, can only be referable to the contract at issue and no other. Indeed, appellees do not deny this or put forth evidence to the contrary.

As we have said, "such acts [relying on the contract] must be clear and definite and refer exclusively to the alleged agreement." *Hamilton, supra,* 93 Md. at 219, 48 A. 709. To "require the acts of part performance to prove the exact contract as alleged," however, is not necessary. *Unitas,* 314 Md. at 708, 552 A.2d 1285. Indeed, the acts of part performance and the evidence establishing them

> "... cannot fully show what are the terms of the agreement alleged and relied upon by the plaintiff, nor are they introduced for any such purpose.... [T]he acts ... must [simply] be such as show that some contract exists between the parties; that they were done in pursuance thereof, and that it is not inconsistent with the one alleged in the pleading."

*Unitas,* 314 Md. at 708, 552 A.2d 1285. Thus, F & F's issuance of bonuses to Funkhouser under the compensation provisions of the purported agreement does not mean that the noncompetition and trade secrets provisions were not also contained within the terms of the agreement. Indeed, Funkhouser concedes in his deposition that an "agreement" whereby he would, *inter alia,* not compete with F & F had been reached. Rather, given the change in the rights and duties of the parties as a result of the agreement, it raises an issue as to the implementation of the contract.

We hold, therefore, that F & F's payment of money to Funkhouser under the agreement and Funkhouser's acceptance of those sums raised a genuine issue of material fact as to the existence of a partial performance sufficient to take the agreement out of the Statute of Fraud's requirements. Under these circumstances, summary judgment in favor of appellees was improper.

### b. Estoppel

Appellant also urges us to enforce the employment agreement on general estoppel grounds. Not only did Funkhouser

promise to draft the agreement, appellant contends, he continually reaffirmed his commitment thereto and reaped benefits arising therefrom in the process. These actions, appellant continues, "induced" F & F to continue his employment, to give Funkhouser financial rewards and professional training, and to permit continued access to F & F's files and clients. Appellees deny that the facts justify these allegations.

 The application of the doctrine of equitable estoppel is very fact-specific. *Dixon v. Process Corp.*, 38 Md.App. 644, 658, 382 A.2d 893, *cert. denied*, 282 Md. 731 (1978). Not only must "the party against whom the application of the doctrine is sought ... be[ ] blameworthy 'of some unconscientious, inequitable or fraudulent act of commission or omission upon which another has relied and been misled to his injury,'" *id.* (quoting *Rodgers v. John*, 131 Md. 455, 462, 102 A. 549 (1917)), but the aggrieved party must also have acted with reasonable diligence in order to come within, at the least, the penumbra of equity's protection. *Id.* (citing *Savonis v. Burke*, 241 Md. 316, 320, 216 A.2d 521 (1966); *Rupp v. M.S. Johnston Co.*, 226 Md. 181, 190, 172 A.2d 875 (1961); *J.F. Johnson Lumber Co. v. Magruder*, 218 Md. 440, 448, 147 A.2d 208 (1958)).

 The facts of the instant case at least give rise to a dispute of material fact as to the propriety *vel non* of Funkhouser's actions in respect to his representations to appellant. Moreover, given the fact intensive nature of the conflict—and of the remedy—it was inappropriate to dispose of the matter on summary judgment.

Further,

[i]n order to prevail with respect to promissory estoppel, evidence must be offered to show that: the promise was fraudulently made, [the promisor] anticipated that [the promisee] would rely on the oral promise, the reliance was reasonable, [the promisee] engaged in acts unequivocally referable to tne oral promise, and [the promisee] suffered substantial injury as a result of [the] reliance.

*Snyder*, 79 Md.App. at 459, 558 A.2d 412. When he told F & F that the agreement had been completed, Funkhouser might

well have anticipated that F & F would act in accordance with its provisions. As we previously stated, in paying out bonus money and salary increases, F & F did so because it perceived that both it and Funkhouser were obliged under the agreement that Funkhouser had told them he had drafted. As appellees correctly indicate, however, evidence of Funkhouser's fraud must be proven by clear and convincing evidence. *Dixon,* 38 Md.App. at 656, 382 A.2d 893. It is not at all clear that appellant could not have met this burden. In any event, sufficient conflicting material facts were raised so as to render summary judgment especially inappropriate under the circumstances. As with equitable estoppel, the trial court failed to give proper consideration to the nature and character of promissory estoppel and erred in entering judgment in favor of Funkhouser.

## B.

Appellant similarly posits that the trial court improperly granted summary judgment in favor of H & B on its interference with contract and with prospective business advantage claims. H & B, appellant argues, "grounded their sole argument for summary judgment on the unenforceability of the Employment Agreement, not the lack of factual disputes on the underlying actions comprising the torts themselves." Essentially, H & B posits that, in the absence of an enforceable contract, there could be no interference claim in respect thereto. We do not agree.

"[I]t usually is held that contracts which are voidable by reason of the statute of frauds ... can still afford a basis for a tort action when the defendant interferes with their performance." *Daugherty v. Kessler,* 264 Md. 281, 286, 286 A.2d 95 (1972), and cases cited therein. Thus, H & B cannot avail itself of the agreement it puts forth in defense of F & F's interference claims. With this in mind, we now look to the requirements of the tort itself.

In *Winternitz, supra,* 73 Md.App. 16, 532 A.2d 1089, we described the tort of intentional interference with

contract in the following manner: " 'a third party who, without legal justification, intentionally interferes with the right of a party to a contract, or induces a breach thereof, is liable in tort to the injured contracting party.' " *Id.* at 25, 532 A.2d 1089 (quoting *Orfanos v. Athenian, Inc.,* 66 Md.App. 507, 520, 505 A.2d 131 (1986). *See also Restatement (Second) of Contracts* §§ 766–767 (1981). An action grounded on the tort "has two general manifestations . . .[:] when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract or, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." *Macklin v. Robert Logan Assocs.,* 334 Md. 287, 297, 639 A.2d 112 (1994) (citation omitted). *See also Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.,* 336 Md. 635, 650–51, 650 A.2d 260 (1994); *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 69–70, 485 A.2d 663 (1984). The former instance, *i.e.,* inducing the breach of an existing contract, narrowly construes the ability to interfere with the parties' obligations under the contract. The latter, however, provides a broader right to interfere without tortious consequences. It has been recognized that contracts at will fall within the second category of the tort—"it may or may not continue at the sole option of one of the parties," neither having a vested interest therein. *Macklin,* 334 Md. at 299, 639 A.2d 112.

As stated,

> [t]o establish tortious interference with prospective contractual relations, it is necessary to prove both a tortious intent and improper or wrongful conduct.

*Id.* at 301, 639 A.2d 112. The *Macklin* Court described these elements in depth: the former is proven by demonstrating that "the defendant intentionally induced the breach or termination of the contract in order to harm the plaintiff or to benefit the defendant at the expense of the plaintiff." *Id.* "[O]rdinarily," the Court continued, "whether particular conduct is proper or improper is a factual question to be determined on the basis of all the facts and circumstances." *Id.*

Our review of the record leads us to conclude that the trial court did, in fact, err in granting summary judgment in favor of H & B. Appellant presented enough facts as to material matters to withstand such a motion. There can be no doubt that H & B's service of F & F's former clients inured to its benefit. Furthermore, it is improper summarily to determine the propriety *vel non* of H & B's conduct with respect to its association with Funkhouser. A genuine issue of material fact arose concerning whether H & B's actions were sufficient to render it liable to appellant under the broader variation of the tort, and the trial court erred in entering judgment in favor of H & B.

## CONCLUSION

The trial court erred in granting summary judgment in favor of both appellees. We reverse.

**JUDGMENTS REVERSED; COSTS TO BE PAID EQUALLY BY APPELLEES.**